## RUTH BROOKS

*v.*

## JOHN L. WENTZ et al.

[Argued April 18th, 1901. Decided May 1st, 1901.
Filed May 2d, 1901.]

1. Where the description of land contracted to be sold in an option is sufficient to identify the land with reasonable certainty, the option is sufficient to sustain a bill for specific performance.

2. Where the owner of land gave an option on August 24th, 1899, agreeing to convey the same on acceptance of the option at any time within one year, provided written notice of the acceptance was given at least thirty days prior to the expiration of the year, and notice of acceptance was given on July 23d, 1900, the owner thereby became absolutely bound to convey to the purchaser.

3. The owner of land heavily encumbered gave an option to convey it to complainant on her acceptance at any time within one year, agreeing to deliver a deed with full covenants of warranty, but, believing he would be unable to discharge the encumbrances, he executed another option to defendant on a larger tract, including the land first sold, which defendant accepted, and received a conveyance, with notice of plaintiff's option.

At the time of the conveyance, the purchase-money was distributed among the encumbrancers, and releases executed by them, all of which were in terms made to the original owner of the land, defendant refusing to pay the purchase-price, except as it might be applied in his presence to secure the releases.—*Held*, that such payment and application of the purchase-price discharged the encumbrances and merged the same in the title to the property conveyed by the owner to defendant, and hence he was not entitled to claim subrogation to the original rights of the encumbrancers on being compelled to specifically perform the option given by the owner to complainant.

*Mr. Robert H. McCarter,* for the complainant.

*Mr. James Steen* and *Mr. Edmund Wilson,* for the defendants.

STEVENS, V. C.

This is a suit for the specific performance of an accepted option to convey land. Performance is resisted on the ground (1) that the land is not described with sufficient definiteness, (2) that the contract was, in whole or in part, abandoned, (3) that if decreed, it can only be on the terms of reviving certain encumbrances which, prior to October 1st, 1890, rested on the land.

As to the first defence, it seems clear that it is not sustained. There is no difficulty in ascertaining exactly what land Lovatt, the owner, agreed to convey. Reasonable certainty in the description is all that is required. *Robeson* v. *Hornbaker, 2 Gr. Ch. 60; Huffman* v. *Hummer, 3 C. E. Gr. 83; King* v. *Ruckman, 6 C. E. Gr. 606; S. C., 9 C. E. Gr. 556; Shardlow* v. *Cotterell, 20 Ch. Div. 90.*

The second defence is equally unsustained. The letters of July 18th and 23d, written by Mrs. Brooks, and the notice served upon Mr. Steen on October 1st, only a few days before Dr. Wentz took his deed, show plainly that there was no abandonment of any right which the agreement gave.

The only question about which I have had any doubt is that which relates to the rights of the parties as affected by the situation of the property with respect to encumbrances. The facts pertinent to this part of the case are the following: On August 24th, 1899, John T. Lovatt, being the owner of several

parcels of real estate at Red Bank, all of them heavily encumbered, entered into a written agreement with the complainant, Ruth L. Brooks, to convey to her a country place near Red Bank for $11,000. The conveyance was actually made on September 8th, 1899. By the same agreement he gave her the option of purchasing, for the price of $4,000, what was described as "the balance of the hill property, so called," lying immediately to the north of the property conveyed, and containing about four acres. The survey shows three and sixty-four hundredths acres. The option was "to remain in operation one year," but written notice that Mrs. Brooks desired to avail herself of it was to be given at least thirty days prior to the expiration of the year. Notice, in writing, to that effect was given on July 23d, 1900, and thereupon Lovatt became absolutely bound to convey. *Hawrally* v. *Warren, 3 C. E. Gr. 124.* At the time when the agreement was made and up to the latter part of September, 1900, the land was encumbered by four mortgages and two judgments. The mortgages originally amounted to $20,800, and covered other lands as well as the *locus in quo,* but they had been paid in part. The judgments amounted to $3,475.05. There was, in addition, another mortgage, for $3,642, which did not cover the *locus in quo,* but did cover part of the other lands.

The option to Mrs. Brooks was given, as I have said, on August 24th, 1899. Before it was accepted, Mr. Lovatt, the owner, by a writing, dated April 20th, 1900, agreed to convey the lands covered by this option and an adjoining piece of land, containing about six acres, to Dr. Wentz, for the price of $10,000. Neither Dr. Wentz nor Mr. Lovatt was sworn, and so we do not know positively whether Lovatt then stated to Wentz that he had given this option. The agreement does not mention it. This is, however, immaterial to the present inquiry, because it conclusively appears that Mr. Steen, who acted as attorney for Wentz, very early in the transaction, and before any money was paid to Lovatt or on his account, got actual knowledge of it. With this knowledge, and with knowledge, too, by Mrs. Steen that the complainant had accepted the option, Lovatt gave a deed to Wentz some time between October 1st and October 8th, 1900. The insistment is, of course, that Wentz,

taking with notice, is bound to convey the land mentioned in the option, just as Lovatt would have been bound to convey had he remained the owner.

The reason why Lovatt did not convey to Mrs. Brooks was that the option called for "a deed of warranty, with full covenants, conveying the property free and clear of all encumbrances." Such a title Lovatt thought he was unable to give. The evidence is that the encumbrancers refused to release the four-acre tract on receipt of the price of $4,000, although they were willing to release the ten-acre tract (which included the four-acre tract) on receiving the price of $10,000. Dr. Wentz's attorney had tried to secure an assignment of the option of Mrs. Brooks and had failed, and the only explanation that suggests itself of his willingness to take title, when he knew that Mrs. Brooks had a superior claim, which she would not surrender, is that he knew that she had refused to take an encumbered title, and that he may have thought that she would not, perhaps, under the circumstances, be willing to sue for specific performance against the view of her then attorney, Mr. Degnan, who seems to have supposed that her remedy was, under the circumstances, a suit at law for damages. But while Mr. Degnan had, during the summer, expressed this view to Mr. Steen, not as the opinion of Mrs. Brooks, but as his *own* opinion, he, on October 1st, only five or six days before the conveyance to Dr. Wentz was made, pursuant to the explicit direction of Mrs. Brooks, served a notice on Mr. Steen, which took away all semblance of right on his (Steen's) part to suppose that Mrs. Brooks' claim would in any respect be given up. Probably it was thought that Dr. Wentz would not be seriously injured, because he would, in any event, receive the price of the property, and might, in acquiring title, be in a better position to negotiate. He desired to utilize the hill for a stand-pipe, to be erected by a water company in which he was interested, and the risk, he may have thought, was worth taking.

His position in the matter is such that I do not think he is entitled to any special consideration at the hands of a court of equity—to anything more than his legal rights.

Now, it is perfectly well settled that if an owner agrees to

sell, and then conveys, in breach of his agreement, to a third party having notice, the grantee stands in no more favorable position than the grantor. This is conceded. But it is said that if the court decrees performance, it should, as against the complainant, regard the encumbrances which rested upon the property just before Lovatt conveyed as still subsisting. The situation was this: On October 6th, or 7th, the attorney of Lovatt and Wentz got together the encumbrancers, or their representatives, obtained from them releases, or, in the case of the bank judgment, a promise of release. Mr. Steen, on behalf of Dr. Wentz, then produced the $10,000, and this was divided among the encumbrancers. All the releases but two were, in terms, made to Lovatt. Two, however—a small judgment for $106 and a mortgage for $1,300, on which $700 was paid, both held by Julia T. Lovatt—were released to Dr. Wentz.

The contention of Dr. Wentz is that, by the agreement of April 20th, 1900, he became the equitable owner of the land, and that when his money was paid it was really paid to protect his interest as such, and that he thereupon became entitled to be subrogated to the rights of the encumbrancers to the extent of his payment. Passing by other objections to this argument, it is plain that, on the theory that Wentz became the equitable owner of the land by mere force of the agreement, and notwithstanding the prior right of Mrs. Brooks, Lovatt became the equitable owner of the money; and so it was not Wentz's money that paid the encumbrancers, but Lovatt's.

In *Duncan* v. *Smith, 2 Vr. 325, 329,* it is said, by Chief-Justice Beasley, that the general rule is "that whenever the money due upon a mortgage is paid, it will operate in law either as a discharge or an assignment, as will best subserve the purposes of justice and the just intent of the party," and in *Wade* v. *Miller, 3 Vr. 296, 308,* the same judge, after remarking that the rule is not founded on any secret or undisclosed intention of the person interested, but is always rested on an intention to be deduced from the facts of the case, continues as follows: "If the owner of an equity of redemption should acquire the mortgage title, and should then cancel it upon the record, no circumstance would remain from which an inference could be

Brooks *v.* Wentz.

drawn of an intent to keep alive such an estate, and consequently a merger would inevitably be effected."

Now, judged by this rule, it seems to me perfectly clear that, in the present case, it was the intention to *discharge* the liens upon the ten-acre tract, and not to keep them alive. Plainly it was beneficial to Dr. Wentz to discharge them upon the six-acre tract, and so an intention to discharge them as to this tract would be inferred, and no different intention appears with respect to the four-acre tract. But we have conclusive evidence of intention outside of this. In the first place, in the case of the mortgages not paid in full, the releases are, in terms, a discharge of the land from the lien; in the second place, in the case of the Davis mortgage, the largest of all that was paid in full and was canceled of record, and in the third place, Dr. Wentz's attorney, so far from declaring that there was any idea of keeping the encumbrances alive, says that he refused to pay over the purchase-money except as it might be applied in his presence to secure releases. It must be remembered, too, that the debts so paid were all the personal debts of the mortgagor, whose money went to pay them and whose interest it was not to keep them alive. On the reasoning of the above cases and of *Adams* v. *Angell, 5 Ch. Div. 634,* I must hold that the lien is extinguished.

Under these circumstances, I think there is no ground for the application of the doctrine either of subrogation or of equitable assignment. Dr. Wentz, taking with notice, became, constructively, a trustee for the complainant. She has done nothing to discharge the trust, and the situation is the same now that it was at the time of the conveyance. The complainant is entitled to relief.