IDA THOMMEN

*v.*

MAGGIE A. SMITH.

[Submitted January 30th, 1918. Determined February 2d, 1918.]

1. A lessee's executrix and sole devisee may enforce an option to purchase contained in a lease.

2. A lessee may enforce specific performance of an option to purchase contained in a lease.

3. An option to purchase contained in a lease is not abrogated because the parties made a purchase agreement containing different terms of payment, which they later abandoned by mutual consent, when thereafter they continued to act under the terms of the lease.

On final hearing on bill for specific performance.

*88 N. J. Eq.* Thommen *v.* Smith.

*Messrs. Stackhouse & Kramer,* for the complainant.

*Mr. Garfield Pancoast* (with whom was associated *Mr. Walter R. Carroll,* of *Messrs. Wilson & Carr*), for the defendant.

LEAMING, V. C.

This is a suit to enforce specific performance of an option of purchase of real estate.

A lease of the property was made by defendant to complainant's testator April 23d, 1914, for a term of three years, with the stipulated rent for the term payable in equal monthly payments in advance.

The lease contains the following clause:

"The party of the first part [owner] agrees that at any time during the term for which said premises are let and rented, the said party of the second part [tenant] shall have an option to buy the said premises for the sum of seven thousand dollars."

April 10th, 1917, complainant, who is the executrix of the lessee and devisee of his entire estate, exercised the option of purchase contained in the lease by tendering to defendant the full purchase price in cash and demanding the execution of a deed of conveyance.

The defence is based upon a claim that the option of purchase contained in the lease was rendered void or unenforceable by reason of certain transactions which occurred between defendant and the lessee in December preceding the expiration of the term.

In that month an agreement of sale was entered into between defendant and the lessee wherein the lessee agreed to purchase and defendant agreed to sell the leased premises for $7,000, payable as follows: One hundred dollars was to be paid at the time the agreement was signed; a mortgage of $4,000, then on the premises, was to remain; defendant was to take a second mortgage for $1,000; the balance of $1,900 was to be paid in cash at a settlement to be made January 8th, 1917. The agreement also provided that the $100 cash paid down should be forfeited by non-fulfillment by the lessee at the time named for

settlement, and should be returned to the lessee in case defendant failed at that time to deliver a marketable title. The $100 was paid at the execution of the agreement, but before the time for settlement the lessee requested to be relieved from the agreement and defendant consented thereto. By mutual assent the $100 which had been paid was disposed of by defendant crediting the lessee with one month's rent, then about due, and applying the balance to the payment of expenses which had been incurred by defendant.

Shortly after the abrogation of the agreement of sale the lessee died, and complainant, who is his executor and sole devisee, continued in possession as tenant and each month paid to defendant the monthly rental reserved by the lease.

Defendant now urges that the agreement of sale amounted to an exercise of the option contained in the lease and that its execution and subsequent abrogation amounted to such an exercise and abandonment of the option that it could not thereafter be exercised and enforced.

There is no material conflict in the testimony. Admittedly, the transactions between the parties were substantially as above stated. There is no evidence indicating that in agreeing to abrogate the agreement of sale either of the parties at that time had any specific purpose, intent or thought as to what effect the transaction had or might have upon the right of the lessee to thereafter exercise his option pursuant to the terms of the lease. The whole transaction may be embodied in the statement that the agreement of sale was made because complainant's testator at that time wanted to buy on the terms stated in the agreement of sale, and defendant was at that time willing to sell on those terms; the agreement of sale was canceled because complainant's testator thereafter determined that he did not want to buy at that time on those terms, and defendant was willing that the contract be abrogated and accordingly so agreed.

The sole question for determination is what effect the execution of the agreement of sale and its subsequent abrogation by mutual assent before the date specified for its performance had upon the option contained in the lease. The diligence of counsel has discovered no adjudicated case based upon similar facts.

I understand it to be conceded by defendant that at the death of the lessee all rights which the lessee had under the lease, including the option of purchase, passed to complainant as executrix. This is expressly determined in *McCormick* v. *Stephany, 57 N. J. Eq. 257,* and in the cases there cited (at *p. 263*). But as complainant herein is both executrix and sole devisee of all the estate of her testator her right to enforce the option to the same extent that her testator could if alive is beyond question.

The right of a lessee to enforce specific performance of an option of purchase contained in his lease is also well recognized. Such contracts, being in form unilateral, are specifically enforced in equity because a consideration for the option is presumed to exist. In *Hawralty* v. *Warren, 18 N. J. Eq. 124,* this is stated as follows:

"In taking a lease, a tenant may be willing to pay a high rent for a number of years, provided the landlord will give him an optional right to purchase at a fixed price. And it is to be presumed that the landlord would not agree to such a boon, unless he had a consideration in the lease. Any sufficient consideration would make such unilateral contract binding in equity." See, also, *Ten Eyck* v. *Manning, 52 N. J. Eq. 47, 50.* These principles appear to obtain independently of the consideration imported by the sealed instrument.

Returning now to the inquiry whether the agreement of sale and its subsequent cancellation by mutual assent were operative to destroy the binding force of the option contained in the lease, it should be noted that the agreement of sale did not conform to the terms of the option contract. The amount of the purchase price alone was the same. The option agreement could have been enforced only by the payment of that amount in cash. The agreement of sale was a matter of new negotiation as to the method of payment; only $2,000 in cash was required of the lessee under that agreement. It should be noted also that the agreement of sale stipulated a result to flow from a failure of the lessee to consummate the agreement on the day named for settlement. That result was the forfeiture of the $100 paid down at the execution of the agreement; no suggestion is contained in the agreement that a further result of the breach shall be a for-

feiture of the lessee's term under his lease or of the optional right contained in the lease. It should be noted also that the agreement of sale further provided the result to flow from the inability of defendant to convey a marketable title on the day named for settlement; in such case the $100 cash payment was to be returned to the lessee immediately. The clear import of these two clauses is to the effect that in the event of failure to consummate the agreement of sale on the day named, by reason of either of the circumstances stated, the agreement should be at an end; the lessee's failure to result in a forfeiture of the $100; defendant's failure to result in a return of the $100.

It will be scarcely contended that the failure of defendant to make a marketable title on the day named for settlement, and the consequent return of the $100 and termination of the agreement was intended by the parties to be also operative to terminate their relations as landlord and tenant; nor can it be reasonably assumed that it was intended that the termination of the agreement by the lessee's failure to pay on the day named and the consequent forfeiture of the $100 was to be operative to terminate the relation of the parties as landlord and tenant. I think it clear that the parties to the agreement contemplated that in the event of the agreement not being carried out at the time set for that purpose by reason of either of the causes specified, the agreement of sale should be considered at an end and the relations of the parties as landlord and tenant continued. It therefore seems impossible to treat the agreement of sale as having in itself the effect of merging or otherwise suspending the lease without doing violence to the apparent intent of the parties. That the possession of the lessee during the period between the date of the agreement of sale and the date named for settlement, was treated by the parties as possession as a tenant as distinguished from possession under an agreement of purchase, is further manifest by the following clause of the agreement:

"Taxes, water rent, rent and all municipal liens to be adjusted at the time of settlement."

The agreement of sale was not terminated for either of the two causes named in it, but was terminated by mutual assent of the parties prior to the date named for settlement. In so termi-

nating the agreement of sale, one month's rent, then about due under the lease, was credited to the tenant out of the $100 advance purchase price payment, and thereafter monthly payments of rent continued to be made pursuant to the terms of the lease. In that transaction it is apparent also that the parties considered their relations as landlord and tenant under the lease wholly uninterrupted and undisturbed by either the contract of sale or its abrogation.

Assuming, as I think it must be assumed, that the respective parties at all times treated the lease as subsisting, and as determining their respective rights and obligations as landlord and tenant, I think no justification can be found for the claim that the option contained in the lease became inoperative in the event of the failure of the agreement of sale for either of the causes therein specified or by mutual assent to its abrogation. The option was an integral part of the lease. The rental paid each month presumptively included a proportionate part of the consideration for the option. Although the agreement of sale embodied terms not contained in the option and was the result of independent negotiations, should it be treated as an attempted exercise of the option, no fault can be attributed to either party in its abrogation because that was by mutual assent. In that abrogation of the agreement of sale neither party manifested any purpose to modify in the slightest degree their duties and obligations under the lease; they simply abandoned their mutual purposes to then make a sale and purchase. In thus continuing their relations as landlord and tenant under the lease, the respective parties must be assumed to have intended those relations to continue in all respects as defined by the lease in the absence of any circumstance indicating to the contrary.

Counsel for defendant has pointed to a line of authorities, to the effect that where an option of purchase has been surrendered or abandoned, it cannot thereafter be exercised. Thus, in a lease with option of renewal at the same price or at such higher price as might be offered by another, a statement by the tenant to his landlord made prior to the end of the term that he will not renew at the price contained in the offer of another which is shown to him by his landlord, may be treated by the landlord as an

abandonment of the option and justify him in closing a contract with the party making the offer. But in the present case there has been no abandonment by the tenant of the option; nor has the landlord obligated himself to another nor in any way treated the option as abandoned except by the present refusal to convey to complainant.

I will advise a decree of specific performance pursuant to the prayer of the bill.