JOEL E. CRANDALL, respondent,

*v.*

CHARLOTTE STELLA GRAHAM et al., appellants.

[Decided June 19th, 1922.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, who filed the following opinion:

"This is a bill for specific performance of what is contended by complainant to be an agreement for the conveyance of certain real property located at 119 Broadway, Paterson, New Jersey, owned by the defendant Charlotte Stella Graham, who is the wife of the defendant Nelson Graham.

"The premises were leased to complainant by indenture dated February 1st, 1917, for the term of five years, from and after May 1st, 1917, which was duly executed by both Charlotte Stella Graham and Nelson Graham, her husband, and acknowledged by both, and also by Charlotte Stella Graham, separate and apart from her husband, before Thomas W. Randall, a master in chancery of New Jersey. It was also signed by Joel E. Crandall, lessee. It was not recorded. See section 8 of the Married Woman's act (*3 Comp. Stat. p. 3229*).

"Under the terms of the lease the lessee was to pay a yearly rental of $1,200, in monthly payments of $100 each, the water rent, the taxes in excess of $295.80 per annum, and any increased rate of premium for the fire insurance that might be imposed. The lessee was also obligated to make all inside and outside repairs to all buildings and structures upon the premises, and keep the same in a good, suitable, and sufficient state of repair at his own cost and expense during the term of the lease, and at the expiration thereof to surrender the premises in as good state and condition as reasonable use and wear would permit. Leave was also given the lessee to make certain extensive

changes, alterations, and additions to the building within three years from the date of the lease, at his own cost and expense.

"The lease also contained the following provision:

"'And the said party of the first part do further covenant and agree to and with said party of the second part that he may purchase the premises hereby leased at any time within three years from and after May 1st, 1917, for the sum of eighteen thousand dollars. This option to be and become absolutely null and void unless exercised prior to May 1st, 1920, and time to be of the essence hereof, and the party of the second part to give the party of the first part three months' notice in writing of his intention of purchasing said premises upon the above terms within three years, as aforesaid, if he should elect so to do. And upon the sale and conveyance of said premises to said party of the second part this lease to terminate and to become null and void.'

"Complainant testified that he spent about $5,400 for improvements on the property in a little over two years, and that on November 28th, 1919, he served on the defendant Charlotte Stella Graham the following notice:

"'November 28, 1919.
"'Mrs. Charlotte S. Graham—Dear Madam : I hereby wish to notify you that I intend to take advantage of my option in my lease of your property at 119 Broadway, Paterson, N. J., on or before May 1st, 1920.
"'Very truly yours,
"'JOEL E. CRANDALL.'

"He says in this respect:

"'I handed her the envelope, telling her there was my notice of acceptance of the option and my check for the taxes.'

"On April 21st, 1920, complainant caused to be mailed to Charlotte Stella Graham and Nelson Graham, her husband, and to John H. Banta, Mrs. Graham's son, a notice, of which the following is a copy:

"'To Charlotte Stella Graham and Nelson Graham, her husband :
"'You are hereby notified that in accordance with your lease made on February 1st, 1917, in and by which you rented to me, the undersigned, the premises known as 119 Broadway, Paterson, N. J., for the term of five years, and in which lease you granted to me a three-year option to purchase said premises any time within three years from May 1st, 1917, for the sum of eighteen thousand dollars ($18,000), provided I gave you three months' notice in writing of my intention of exercising said option and purchasing said premises; and in so far as said notice has been served on me of my intention to exercise my option of purchasing under said lease, you are hereby further notified that I am prepared to pay you

the full mount of said sum of eighteen thousand dollars, and have appointed Saturday morning, April 24th, 1920, at the office of John H. Reynolds, in the Paterson Savings Institution, Paterson, N. J., at ten o'clock in the forenoon, at which time and place I shall expect a deed from you for said premises upon the payment of said amount.

" 'Dated April 21st, 1920.

" 'JOEL E. CRANDALL.'

"Mrs. Graham said that she never received the notice of November 28th, 1919, but she admits having received the notice of April 21st, 1920. Mr. Banta also received that notice; but the husband, Nelson Graham, testified that when he was notified that there was a registered letter at the post-office for him, he went there to see about it, and upon learning from whom it came, said: 'It was so much past the time of that option, that I would not receive it.' It was returned by the post-office department to the sender, undelivered.

"Complainant testified that with the notice of November 28th, 1919, he also delivered to Mrs. Graham a check for $58, being excess taxes which it was incumbent upon him to pay under the terms of the lease. Mrs. Graham admits receiving the check, and, indeed, she cashed it on December 1st. She says, however, that she received no notice of the acceptance of the option that day.

"Mrs. Crandall, the wife of the complainant, testified that she was present when Mr. Crandall wrote the notice of November 28th, 1919; and Miss Ida M. Titus, a relative, who was visiting them, was present at the same time. She testified that she saw Mr. Crandall write the notice, and that she read it after it was written. This followed immediately after a discussion among them regarding the purchase of the property by Mr. Crandall, and ways and means of financing the purchase; and that having reached a decision that the property should be purchased, Miss Titus had agreed to invest in the property and to help Mr. Crandall, to some extent, to finance the operation. She also said that she was in a position to do at the time.

"Neither Mrs. Crandall nor Miss Titus, however, could say of their own knowledge that Mr. Crandall had actually served the notice on Mrs. Graham.

"So far as the direct affirmative proof on this point is concerned, it consists of Mr. Crandall's assertion that he delivered the written notice of November 28th, 1919, to Mrs. Graham with the check for $58 for taxes, at the same time saying to her that his notice of acceptance of the option was there with the check for the taxes; Mrs. Graham's positive denial of ever having seen or received the notice raises the issue as to which version of the transaction is to be accepted.

"(1) It is to be observed, however, that there is no direct refutation of the service of the notice by Mr. Crandall; Mrs. Graham's apparent refutation goes simply to her not having seen or received it. If Mr. Crandall gave it, it was not essential to its effective operation that Mrs. Graham should have read it.

"It also appears from the testimony that Mr. Crandall endeavored to see or get in communication further with Mrs. Graham about the acceptance of the option, and that he had difficulty in doing so. He said: 'I never could talk to either her or her husband.' And on one occasion, early in March, 1920, when he mentioned the subject to her, she told him that she did not want to talk to him, 'and slammed the door in my face.' William Stott was present on that occasion, and he testified to this effect:

"'A. Mr. Crandall handed Mrs. Graham an envelope, and then he said, "I wish to speak to you about the purchase of the property for which I have the option."

"'Q. What did she say?

"'A. She said, "I don't wish to speak to you," and shut the door.'

"The testimony of Mrs. Graham and of her husband, and the communication from the son, all tend to show that the defendants were extremely anxious to avoid Crandall's communicating with them; even to the submitting of the matter by Mr. Banta, her son, to the legal department of the Prudential Insurance Company, with which he was connected as manager, and whose stationery he used, for such effect as it might have.

"By the notice of April 21st, 1920, complainant signified his complete willingness to accept a deed for the property and to pay the purchase price under the agreement; but Mrs. Crandall

did not appear at the time and place fixed, either to comply with her part of the agreement or to state any grounds for her refusal so to do, having previously, through Banta, notified Crandall of her refusal to be present.

"'April 22, 1920.

"'Mr. E. H. Lambert, 48 Church Street, Paterson, New Jersey— Dear Sir: Your letter of April 21, inclosing a notice to have my mother, Mrs. Graham, meet with you and Mr. Crandall on Saturday of this week, in connection with the purchase of her property has been received.

"'After again taking the matter up with our legal department, I once more ask that you or Mr. Crandall be good enough to submit proof that notice was given Mrs. Graham prior to February 1, 1920, of Mr. Crandall's intention to buy.

"'The notice which you sent me, simply over Mr. Crandall's signature, is proof of nothing, and unless you can submit to me or my mother real tangible proof between now and Saturday morning, it will certainly and positively not be convenient for Mrs. Graham to be present at any such meeting which you and Mr. Crandall have evidently taken upon yourselves to arrange.

"'Very truly yours,

"'J. H. BANTA.'

"(2) Under section 39 of the Conveyance act, as amended by the act March 21st, 1912 (*P. L. 1912 p. 158*), read in conjunction with section 21 of the Conveyance act, as amended by act April 14th, 1914 (*P. L. 1914 p. 306*), and sections 5 and 14 of the Married Woman's act (*3 Comp. Stat. p. 3226*), an 'agreement or sale' of lands of a *feme covert*, executed by her, in which her husband joins, and which has been acknowledged by her as provided therein, can be specifically enforced in favor of the vendee in this court. *Goldstein* v. *Curtis, 63 N. J. Eq. 459; 52 Atl. Rep. 218; Ten Eyck* v. *Saville, 64 N. J. Eq. 611; 54 Atl. Rep. 810; Wolff* v. *Meyer, 75 N. J. Law 181; 66 Atl. Rep. 959.*

"(3) An option of the purchase of lands demised contained in a lease constitutes a binding agreement on the part of the lessors to sell, which cannot be receded from, if the lessee exercises the option according to the terms of the instrument. *Page* v. *Martin, 46 N. J. Eq. 585; 20 Atl. Rep. 46; Hawralty* v. *Warren, 18 N. J. Eq. 124; 90 Am. Dec. 613; Scott* v. *Shiner, 27 N. J. Eq. 185; Lister Agricultural Chemical Works* v. *Selby, 68 N. J. Eq. 271; 59 Atl. Rep. 247.* This case is not

like those where it is sought to establish a contract to convey. The contract here admittedly was made, and there is no evidence to show that it was otherwise than fair in its terms when made.

"The defendants seek to avoid specific performance on the ground that complainant did not give effective notice of his intention to exercise the option contained in the contract.

"(4) The burden of proof to establish a legal defence is on the party asserting it. *Page* v. *Martin, supra.*

" 'And where a defendant pleads an affirmative defence or sets up in his answer facts in avoidance, the burden of proof is upon him.' *16 Cyc. 931; Behr* v. *Hurwitz, 90 N. J. Eq. 110; 105 Atl. Rep. 486.*

"(5 and 6) The evidence in this case satisfied me that the notice which complainant states he served on the defendant Charlotte Stella Graham, on November 28th or 29th, 1919, signifying his acceptance of the option contained in the lease in this cause, was so served upon her; and that signification of complainant's intent was conveyed effectively under the terms of the option. No specific form of notification was required, and I cannot escape the conviction that defendants knew of complainant's desire to exercise the option within a competent period under its terms.

"The defendants, after making the lease and giving the option, undoubtedly repented their bargain because of the general enhancement of real estate values, and were extremely anxious that the complainant would not avail himself of it. Not only has the property increased in value, as admitted by Mrs. Graham in her testimony, but the complainant has likewise put improvements on the property costing him about $5,400. The probabilities are that he would want to take advantage of the option, as it was so greatly to his advantage to do so, and it is hardly conceivable that he would do otherwise. On the other hand, it is in evidence that the defendants were anxious and afraid lest he might take advantage of the option, as would be the most natural thing for him to do. Of course, they did not have to, nor did they, notify him that they would like to hear as to whether he intended to avail himself of the option. If he defaulted it would be very much to their advantage. The prob-

abilities all favor his acceptance of the option, unless he were utterly devoid of common sense. I was impressed favorably by the complainant's testimony and demeanor, and I feel confident that he was telling the entire truth. I feel equally confident that Mrs. Graham, when she received the check for taxes, must have received the acceptance of the option which was inclosed therein. She may have forgotten that she received it, but however that may be, I am satisfied that she did receive it.

"(7) The Grahams stood by and saw and permitted Crandall to spend his money ($5,400) on the building, and, in the face of his evidence and patent intention and efforts, though unskillfully put forth, should now be estopped from denying Crandall's exercise of the option. And if the option could be construed to permit it to be exercised at any time down to May 1st, 1920, I think the notice of April 21st would be a sufficient exercise of the option.

"Mr. Crandall made all the preparation for the giving of the notice on November 28th, 1919, and the probabilities favor his having done so, despite the defendants' maneuvers to avoid receiving Crandall's notices. It is not probable that Crandall would have spent all this money on the property had he not intended to exercise the option.

"Although the notice of April 21st, 1920, was not a three months' notice, strictly in accordance with the terms of the contract, and defendants could not have been compelled to give a deed before three months thereafter had elapsed, still that period has now gone by, and assuming that to be good notice, there is no reason why specific performance should not now be decreed. Crandall states (testimony, page 14) that he is still willing to pay the purchase price.

"There is nothing in the case to show that defendants will suffer any damage by specific performance that would not be compensated for by payment of interest on the money due to date. *Day* v. *Devitt, 79 N. J. Eq. 342; 81 Atl. Rep. 368.* The property is worth considerably more than it was at the time it was leased, and this is doubtless their reason for avoiding specific performance, plus the desire to get the benefit of the $5,400 spent on the property by Crandall. I am satisfied from the

circumstances disclosed by the proofs, from· the attitude and demeanor of the witnesses on the trial, and of the defendants during the term of the option, from the testimony of Mr. Crandall, and from the circumstances 'surrounding the whole transaction, that Crandall has told the entire truth regarding the acceptance of the option on November 28th or 29th, 1919.

"The defendants seem to have had advice all the way through, in regard to the drawing of the lease, and everything connected with their side of the case, but Crandall, on the other hand, apparently acted for himself mainly. He could have protected himself in regard to the expenditure of the $5,400, and it seems difficult to believe that he would not have done so if he had thought there was any doubt about his ultimately becoming the owner of the property. He made no attempt to bolster up his case, as he undoubtedly could have done, and his attitude convinced me of his trustworthiness.

"Crandall testified that the check for $58 for taxes was folded up inside the notice of his acceptance of the option at the time he handed the envelope to Mrs. Graham on November 28th or 29th; and there is no evidence to specifically refute that, except that of Mrs. Graham, who says that she did not see or receive the notice; she does not say that it was not served upon her in the manner testified to by Mr. Crandall. It is inconceivable that she should have received the check without seeing or gaining knowledge of the notice, except on the theory that she, surmising from what Crandall told her when he delivered the envelope to her that the notice of the acceptance was there, deliberately shut her eyes to it and avoided a realization of its contents, just as her husband did with regard to the notice of April 21st, 1920, which he refused to receive from the post-office department when he learned who it was from, because, as he himself said, he then knew that it appertained to the option.

"I am not unmindful of that trait in human nature which leads one to avoid, if possible, the performance of an obligation, which, because of changed circumstances has become disadvantageous to the obligor; and when, to recede from it would be greatly to his advantage; and that the defendants in this cause would be free from this trait is, perhaps, expecting too much

under the circumstances disclosed. And likewise, it is extremely improbable that Crandall was ignorant of the fact that the property had greatly increased in value, as admitted by Mrs. Graham on her cross-examination, and that he should be unaffected by that fact. Certainly, no man in possession of his normal faculties would allow such advantage to escape him, especially after he himself had spent $5,400 in improving the property.

"(8) The husband, Nelson Graham, in joining in the lease, bound himself to the contract to convey which it contained (*Page* v. *Martin, supra*), thus made effective by the acceptance of the option by complainant; and it was unnecessary to serve notice of the acceptance of the option on him. His rights in the property of his wife were relinquished when he joined in the lease containing the agreement to convey, and it was only necessary thereafter for the lessee to signify his acceptance of the option to the wife, who was the owner of the land.

"Complainant tendered himself ready and willing to accept a deed pursuant to the terms of the contract; and the defendants refused to comply with their part of the agreement.

"Under these circumstances I am convinced that complainant is entitled to a decree for specific performance as prayed, and I will advise a decree accordingly."

*Mr. Wood McKee,* for the respondent.

*Mr. William B. Gourley,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Lewis.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.