FLEURETTE B. CAVANNA and AUGUSTUS R. CAVANNA, complainants-respondents,

*v.*

CARRIE F. BROOKS, defendant-appellant.

[Decided January 19th, 1925.]

1. Specific performance will not be refused, on the ground of lack of mutuality in the remedy, because at the time of the contract the complainant did not have title to the premises to be conveyed, pro-

vided that such title is acquired and can be conveyed' at the time for the performance of the agreement.

· 2. The omission of a due date for a mortgage and the rate of interest thereon will not render a contract so uncertain as to defeat specific performance thereof.

On bill, &c.    On appeal from a decree of the court of chancery.

*Mr. Wm. Elmer Brown, Jr.,* for the complainants-respondents.

*Mr. John C. Reed,* for the defendant-appellant.

The opinion of the court was delivered by

CLARK, J.

By the bill in this case, the complainant Mrs. Fleurette B. Cavanna sought the specific performance of a contract for the sale of a house and lot located on Ventnor avenue, in Ventnor City. On March 7th, 1923, she agreed, in writing, to purchase the property in question from a Mr. and Mrs. Haley, residents of Titusville, Pennsylvania, for a consideration of $19,500. The title under this agreement was to pass on September 15th, 1923. On April 20th, 1923, Mrs. Cavanna entered into an agreement with the defendant herein, Mrs. Carrie F. Brooks, for the resale of the Ventnor avenue property to her for $24,500. This agreement also was in writing, and the title thereunder was to pass on the date set for the performance of the contract with the Haleys. Both of these agreements were on a cash basis as to approximately one-fourth of the consideration, the rest being on various mortgages. They also seem to have included, by way of inventory, the furniture of the house.

The contract between complainant and defendant contained a provision that a lease of· the premises to the latter be executed on or before May 15th, 1923. Accordingly, such a lease was made on April 23d, and Mrs. Brooks entered into

possession thereunder. From a letter, undated, but, obviously, from its context, written some time thereafter by the defendant, she appears to have been attempting to dispose of the property in her turn. Apparently requiring more time to consummate such a resale, an extension of her obligation until October 1st, and finally until October 15th, 1923, was arranged for her by her real estate agents.

In spite of this extension, however, her difficulties in the matter of a resale were not overcome, and seemed to her at least to require the more drastic step of a consultation with her attorney. As a result of this conference, Mrs. Cavanna received a letter, written in behalf of Mrs. Brooks by her attorney, now the solicitor in this cause. This letter, dated October 8th, 1923, advised her that Mrs. Brooks rescinded the contract because of her knowledge just acquired that Mrs. Cavanna did not own the property on April 20th, 1923, the date of her agreement to sell the same.

Thereupon, complainant, acting now upon the advice of her attorney, also her solicitor in this cause, proceeded to carry out her part of the contract with the defendant. On October 15th, 1923, a deed from the Haleys, conveying the property to Mrs. Cavanna, was duly executed and delivered. This was acknowledged by Mr. and Mrs. Haley on October 18th, 1923. On the same day a deed, in compliance with the original contract of April 20th, 1923, conveying the property from Mrs. Cavanna to Mrs. Brooks, was prepared by Mrs. Cavanna. Mrs. Brooks was notified of these facts, and was advised to be present at the office of the South Jersey Title and Guarantee Company, in Atlantic City, in order to accept delivery of the deed to the property, and carry out her obligations as purchaser. Defendant was given several opportunities to appear for this purpose, the final one being on November 8th, 1923, on which day a bill of sale for the furniture was also drawn up. She seems to have availed herself of none of them, and the bill for specific performance was accordingly filed.

As was foreshadowed in the letter of the defendant's solicitor, the principal defense set up by the answer is the existence of a lack of mutuality in the remedy. This allegedly arises

because of the fact that on April 20th, 1923, complainant did not have title to the property she agreed to sell. In fact, her only interest on that date was derived from being the obligee of an agreement to purchase the same, which was unenforceable because it was not acknowledged by Mrs. Haley, the wife of the vendor. The hearing in the court of chancery resulted in a decree directing the performance of the contract. From that decree, defendant now appeals to this court.

From this statement of facts, it is clear that the defendant seeks an extreme application of a principle of equitable jurisprudence, concerning which there has been considerable controversy, both among legal writers and in the courts. It is her contention, as we understand it, that, because of the impossibility of performance by the complainant of her contract to convey the property agreed upon, and because, further, the complainant had not acknowledged the agreement, there is no mutuality of remedy, and specific performance should accordingly be denied. There is undoubtedly authority for this view. Lord-Justice Fry, in his work on *Specific Performance,* says:

"A contract to be specifically enforced by the court must, as a general rule, be mutual—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them." *Fry Spec. Perf. (3d ed ) 215.*

Following him, there have been numerous cases in the courts which cite and support this *dictum.* We agree, however, with the learned vice-chancellor below in his refusal to give it effect in the case at bar.

It is not our intention in this opinion to discuss critically the equitable doctrine of mutuality of remedy. This has been done most fully by Dean Ames in *3 Col. Rev. 1,* and by Dean —now Attorney-General—Stone, in *16 Col. L. Rev. 443* (and see, also, for the historical development of the doctrine of mutuality, a series of essays in *49 A. L. R. 270, 382, 442, 507, 559,* and *50 A. L. R. 25, 65*). All of these writers question the soundness of a rule which is *proved* "by the existence of eight exceptions recognized by the courts." *Willis. Cont.*

§ *1434 et seq.* For our purposes, it is enough that complainant in the case at bar has brought herself within two of the exceptions rather than within the rule. Thus, by filing the bill, Mrs. Cavanna has submitted herself to the jurisdiction of the court and has removed any difficulty as to mutuality arising out of her failure to acknowledge the original agreement. *Woodruff* v. *Woodruff, 44 N. J. Eq. 349.* So, also, her ability to give a clear title at the time of the making of the decree, as was said by Chief-Justice Gummere, speaking for this court in *Gerba* v. *Metruska, 84 N. J. Eq. 141,* deprived the defendant of any right to defeat the bill because of the situation existing in regard thereto at the time the contract was entered into. The contract seems to us to have been performed in time. Even if it was not, however, the possession by the defendant of the premises would seem to remove any objection on that score. *Agens* v. *Cock, 74 N. J. Eq. 528.*

It is true that if complainant had misrepresented the facts as to her title to the property, defendant would have been, if herself an innocent party, entitled to avoid the contract. *Byard* v. *Holmes, 33 N. J. Law 119.* Equally, of course, a court of equity in such a case would have refused specific performance. *Muller* v. *Weiss, 91 N. J. Eq. 321.* The learned vice-chancellor has found, however, that Mrs. Brooks knew, at the time she entered into the contract, that Mrs. Cavanna was not the owner of the property, but had only contracted to buy it from the Haleys. This court will give great weight to the findings of a vice-chancellor who has had an opportunity to see the witnesses. *Cartan* v. *Phelps, 91 N. J. Eq. 321.* Our own examination of the testimony leads us to the same conclusion. Mrs. Brooks' denial of knowledge seems to us evasive and quite inconsistent with the coincidence of the dates in the two agreements and with the circumstances of her requests for extensions and her knowledge of similar readjustments with the Haleys.

It is also maintained in the defendant's answer that specific performance should be refused because the contract sought to be enforced is uncertain in its statement of the consideration.

We do not understand defendant's reliance upon section 5 of the statute of frauds in this connection. It is our impression that, by the express terms of section 9 of that statute (*Rev. 1877 p. 446*), such consideration need not be stated. *Nibert v. Baghurst, 47 N. J. Eq. 208.* At any rate, this point seems to have been abandoned on the argument and in the brief.

Uncertainty in the price, as in any of the other terms in the contract, is undoubtedly a reason for refusing specific performance. *McKibbin v. Brown, 14 N. J. Eq. 13; affirmed, 15 N. J. Eq. 498,* and see *Davila v. United Fruit Co., 88 N. J. Eq. 602.* So, here, the failure of the parties to fix either an interest rate or a due date in the purchase-money mortgages, or one of them, may be said to make the price both uncertain in amount and in the time for the payment thereof. In respect to these particular provisions, however, the courts are able to supply the defects by reference to the ordinary conduct of reasonable men. Thus, when a rate of interest is not stated, the parties will be presumed to have intended the legal rate, that being the one to whose reasonableness the legislature has given its sanction. *Bowne v. Ritter, 26 N. J. Eq. 457.* Similarly, when no date for the maturity of the mortgage is expressed therein, a natural presumption is that the parties intended the creditor-mortgagee to have his money when he asks for it, *i. e.,* on demand. *Luczak v. Mariove, 92 N. J. Eq. 377; affirmed, 93 N. J. Eq. 501.* A like presumption is indulged in respect to negotiable instruments where no time of payment is fixed by the instrument. *Messmore v. Morrison, 172 Pa. St. 300.*

Courts of equity have given effect to these presumptions in cases where specific performance is sought. They have accordingly made decrees, even though the rate of interest is not fixed (*Luczak v. Mariove, supra*), nor the due date for the mortgage included. *Green v. Richards, 23 N. J. Eq. 32; affirmed, 23 N. J. Eq. 536.* In any event, it seems to us that the possession of the premises by Mrs. Brooks, under a lease embodying the terms of her contract of purchase, deprives her of the right to rely upon whatever merit there may other-

wise be in the above contentions. See *Brown* v. *Pinner, 61 N. J. Eq. 231,* and cases there cited.

The decree is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 13.

*For reversal*—None.