BERNARD M. DEGHERI, complainant-appellee,

*v.*

THOMAS R. CAROBINE et al., defendants-appellants.

[Submitted October term, 1927. Decided February 6th, 1928.]

1. Specific performance at its best is a discretionary remedy and a court of equity will not compel a mortgagee to take that which said mortgagee has not agreed to take for the purpose of relieving the premises in question of the operation of liens or encumbrances in order to give a vendee a clear title.

2. The remedy of specific performance is not a matter of strict right, but of sound judicial discretion, and will be granted or denied as the justice and right of the particular case shall seem to the court upon due consideration to require.

On appeal from the court of chancery.

*Mr. John W. Ockford,* for the defendants-appellants.

*Mr. Julius A. Kepsel,* for the complainant-appellee.

The opinion of the court was delivered by

KAYS, J.

This case brings up on appeal a decree of the court of chancery advised by Vice-Chancellor Bentley, directing specific performance of a contract made on March 12th, 1926, between Thomas R. Carobine of the first part and Bernard M. Degheri of the second part. Other parties defendants to this suit were the Fruit and Produce Acceptance Corporation, who held two mortgages on the land agreed to be conveyed under said contract, Michael Starace, who held an assignment of a judgment in attachment against said lands, and Sidney J. Goodman, another judgment creditor in attachment. From this decree the defendants Carobine and the Fruit and Produce Acceptance Corporation appeal. The defendant Carobine was the owner of a tract of land in the county of Bergen containing one hundred and seven lots. By the contract in question Carobine agreed to convey by deed of full covenants and warranty, free from all encumbrances, twenty-three of the lots specifically mentioned in said contract, which lots were situated in the borough of Cresskill, in said county of Bergen. The consideration mentioned in the contract was to be $4,000, $400 of which was payable on the execution of the contract, $2,100 was payable on the delivery of the deed and the balance was to be secured by a purchase-money bond and mortgage for $1,500. There were two mortgages on the land held by the Fruit and Produce Acceptance Corporation, one for $15,000 covering ninety-one lots of the one hundred and seven lots, seven of which ninety-

one lots were part of the twenty-three lots agreed to be sold to Degheri, the other mortgage for $3,000 covering the remaining sixteen lots of the one hundred and seven lot tract, and were the other lots included in the twenty-three lots agreed to be conveyed. The purchase-money mortgage of $1,500 under said contract was to contain a provision that each or any lot could be released by the payment of $100 for each lot so released. Carobine, the defendant, and the Fruit and Produce Acceptance Corporation, another defendant and mortgagee, had orally agreed that the Fruit and Produce Acceptance Corporation was to receive $2,100 in cash and an assignment of the $1,500 purchase-money mortgage to be given by the purchaser to Carobine, for which consideration the defendant the Fruit and Produce Acceptance Corporation was to release the twenty-three lots from the operation of the said two mortgages of $15,000 and $3,000. After the execution of the contract a search of the premises in question revealed a judgment in attachment had been entered in the Bergen county circuit court for the sum of $3,428.64, which was a lien upon the entire tract owned by Carobine. Degheri, the complainant, insisted that this lien should be removed. Carobine was unable to do this, and, in fact, his financial condition was such that he was compelled to apply to a man named Ferro for assistance to prevent the loss of his equity in not only the twenty-three lots but also in the eighty-four remaining one. As a result the defendant Starace took an assignment of the judgment and paid the judgment creditor. This transaction appears to have been done in good faith. Carobine, not being able on account of his financial condition to carry out his contract, defaulted, and Degheri, the complainant, filed a bill to compel specific performance. The learned vice-chancellor advised a decree in which the mortgagee, the Fruit and Produce Acceptance Corporation, should receive cash from the purchaser under the contract at the rate of $100 for each lot, making $2,300 in all, instead of $2,100 cash and the assignment of the purchase-money mortgage of $1,500 as agreed to between the defendant the Fruit and Produce Acceptance Corporation, mortgagee, and the defendant Carobine, the owner. This amount evidently

was arrived at by the vice-chancellor for the reason that Carobine agreed with Degheri that he would release any lot or lots from the operation of the purchase-money mortgage by the payment of $100 for each lot so to be released. The decree also provided that out of the purchase-money to be paid by said Degheri he should pay to the defendant Michael Starace the sum of $858 in cash for which the said Starace should make, execute and deliver to the said Degheri a good and sufficient release, releasing from the operation of his said judgment lien the said twenty-three lots, the said Starace having agreed to accept an amount proportionate to the value of the entire tract for the release of said twenty-three lots from the operation of said judgment. The court in doing this applied a condition in the contract in question which was entirely different from that contemplated by the parties. The court took the position that courts of equity endeavor to enforce specific performance of agreements for the sale of land, and, therefore, was justified in changing the agreement to make the same possible of performance.

The vice-chancellor evidently was mistaken in his belief that the complainant, Degheri, had agreed with one Robinson, the president and manager of the Fruit and Produce Acceptance Corporation, that it would release the operation of the two mortgages of $15,000 and $3,000 on the premises in question upon the assignment to it of the $1,500 purchase-money mortgage. On cross-examination the complainant, Degheri, testified relative to this conversation with Robinson as follows:

*Q.* "Did he [Robinson] say what his company [Fruit and Produce Acceptance Corporation] would require, besides, an assignment of the $1,500 purchase-money mortgage? *A.* He said that that would be arranged with Mr. Carobine; that he would probably take all the cash. In other words, Mr. Carobine was to turn over all the cash that he was to get out of that transaction.

*Q.* "And he said that could be arranged between Mr. Carobine and himself? *A.* Yes, but that he would have a representative at the closing of title, to see that that was carried out.

*Q.* "No definite figure was arrived at? *A.* The only definite figure that I can remember is that he was to get the balance over the mortgage, the $2,100 cash and the $1,500 mortgage.

*Q.* "Mr. Robinson didn't state that that would be what would be required for his company? *A.* No, no; he didn't state that. He said it would be agreeable to him. By his conversation he told me that he was going to get the balance of the money. In other words, Carobine wouldn't get anything except the $400 deposit.

*Q.* "Did you and Mr. Carobine discuss the matter as to how much of the purchase price would be turned over to the Fruit and Produce Company for the real estate? *A.* Oh, he readily admitted to me that he wouldn't get any money out of this. He said he would be glad if all the lots could be sold to pay off the Fruit and Produce indebtedness."

From this evidence of the complainant, Degheri, it clearly appears that Degheri's understanding with the Fruit and Produce Acceptance Corporation, mortgagee, was that the said mortgagee was to release the two mortgages on the twenty-three lots for the payment of $2,100 in cash and the assignment to it of the $1,500 purchase-money mortgage.

We are therefore of the opinion that the court went beyond sound discretion in its decree in this case. Vice-Chancellor Van Fleet, in the case of *Ten Eyck* v. *Manning, 52 N. J. Eq. 47* (at *p. 49*), lays down the following principle:

"The remedy by specific performance is not a matter of strict right, but of sound judicial discretion, and will be granted or denied as the justice and right of the particular case shall seem to the court, on full consideration of the rights and equities of the parties, to require."

As stated in this rule, specific performance at its best is a discretionary remedy and a court of chancery cannot compel a mortgagee to take that which such mortgagee does not wish to take or which it has not agreed to take for the purpose of relieving the premises in question of the operation of liens or encumbrances in order to give a vendee clear title to the land. It makes no difference in this case whether the oral agreement made by the mortgagee was good in equity or not.

If such oral agreement was good and binding on the mortgagee then the mortgagee could not be compelled to take a lesser consideration for the release of its mortgage than it had agreed to take, and if the oral agreement was not binding upon the mortgagee, then the mortgagee would not have to accept any amount less than the full amount of the mortgage covering the entire tract.

Vice-Chancellor Leaming lays down the rule in the case of *Public Service Corporation* v. *Hackensack Meadows Co.,* *72 N. J. Eq. 287,* as follows:

"It is a well-established rule in equity that no contract will be specifically enforced unless there is in the contract such mutuality of obligation that either party may enforce it against the other."

A court of chancery will not grant specific performance where there has been a decided change in the circumstances such as occurred in this case. The difficulty which arose in this case was the discovery of a judgment in the Bergen county circuit court which proved to be a lien on the premises in question, the existence of which lien was unknown to the parties to the contract at the time of its making. The mortgagee, the Fruit and Produce Acceptance Corporation, sets up the statute of frauds claiming that the oral agreement relative to the release of its mortgages was not in writing, as above intimated. This point we think unnecessary to decide, but even assuming that such an oral agreement was good in equity the court could not compel the mortgagee to release its lien for a consideration different from that agreed to between the parties. The circumstances were changed to such an extent after the making of the agreement in this case as to make it inequitable to decree specific performance of the contract. It may be well to mention that nothing appears in this case which tends to show that the complainant requires the property for any special or unusual reason so as to put the case out of the ordinary class or that the legal remedy is insufficient.

Therefore, the decree of the court of chancery is reversed and the bill of complaint dismissed, with costs.