The complainant solicits a decree obliging the defendant specifically to perform the following terms incorporated in a lease executed under date of February 29th, 1944:
"7. It is agreed that the Lessee shall have an option to purchase the above-mentioned lands and premises together with the appurtenances for the sum of fifteen thousand dollars ($15,000.00). However, *Page 172 
it is understood and agreed that this option must be exercised, in writing, not later than sixty (60) days prior to February 28th, 1946.
"8. It is distinctly understood and agreed that in the event the Lessee shall exercise the option to purchase said demised premises, then that the Lessor will convey to the Lessee a marketable title to said lands and premises by General Warranty Deed free and clear of all encumbrances. The terms of said sale to be determined and settled by the parties hereto at the time of the exercise of the said option."
Vide, Hawralty v. Warren, 18 N.J. Eq. 124; Page v. Martin,46 N.J. Eq. 585; 20 Atl. Rep. 46; Lister Agricultural ChemicalWorks v. Selby, 68 N.J. Eq. 271; 59 Atl. Rep. 247; Thommen v.Smith, 88 N.J. Eq. 476; 103 Atl. Rep. 25; Crandall v. Graham,93 N.J. Eq. 675; 115 Atl. Rep. 178; 117 Atl. Rep. 926.
The complainant opportunely exercised the option and initially the defendant manifested its intention to perform. Subsequently, the president of the company announced the declination of the defendant to consummate the conveyance, specifying two reasons: the one, that his wife deemed the price to be inadequate, and that accordingly she was disinclined to execute the requisite deed in her capacity as secretary of the company; the other, that a sale of the demised premises would result in a disadvantageous division of his (the company's) real estate holdings in that locality.
Upon the institution of this suit, learned counsel have been able to supply the defendant with some auxiliary reasons more worthy of judicial attention.
And so, it is now asserted that the agreement embodied in the lease was not intended to be the complete and final contract. I endeavored to state the pertinent rule succinctly in Hardy v.Hangen, 134 N.J. Eq. 176, 177; 34 Atl. Rep. 2d 642:
"Basically, the cause of action must rest upon the existence of an enforceable contract, otherwise the equitable remedy cannot be operative. The relation of negotiation must be organized into that of obligation by an aggregatio mentium upon the same material and substantive matters. The bargain sought to be enforced must consist, in substance and external form, of those qualities, elements and requisites of *Page 173 
a valid contract. There must be a consensus of minds between the parties and the terms must be definitely ascertained. A contract cannot be said to exist so long as negotiations are pending over matters which either of the parties regards as material to it." See Brown v. Brown, 33 N.J. Eq. 650, and the succession of numerous accordant decisions.
There is, however, a rule of equal vitality that where the negotiations are in fact concluded and the contract is complete in all its essential and material terms and the parties intend that it shall be obligatory, then it is enforceable, although it is deficient in the statement of those casual and incidental provisions commonly present in a formal and conventional agreement which the parties contemplate shall in due course be prepared and executed. Wharton v. Stoutenburgh, 35 N.J. Eq. 266; Moran v. Fifteenth Ward Building and Loan Association,131 N.J. Eq. 361; 25 Atl. Rep. 2d 426.
I take it to be the function of equity to follow that rule which righteousness and justice recommend in the circumstances of the particular case. Plummer v. Keppler, 26 N.J. Eq. 481; TenEyck v. Manning, 52 N.J. Eq. 47; 27 Atl. Rep. 900; Degheri v.Carobine, 102 N.J. Eq. 264; 140 Atl. Rep. 406; Hildinger v.Bishop, 126 N.J. Eq. 334, 341; 8 Atl. Rep. 2d 813;65 A.L.R. 7 et seq.; Pom. Eq. Jur. (5th ed.) 1040 § 1404. It is one thing to decline to compel a person to perform an agreement into which he has never decidedly entered and quite another to permit him to escape a peremptory contractual obligation merely because he has changed his mind. The eye of equity must always strive to pierce every curtain of artifice. And so, the application of the one or the other of the rules to which reference has been made depends fundamentally upon the intentions of the parties to be ascertained by a consideration of the writing and the accompanying conditions and circumstances. The determination of the intent of the parties is the solution of a question of fact, and I so regard it in the present cause.
These parties declared: "It is distinctly understood andagreed that in the event the Lessee shall exercise the option to purchase said demised premises, then that the Lessor will *Page 174 convey to the Lessee a marketable title to said lands and premises by General Warranty Deed free and clear of allencumbrances." (Italics mine.) The purchase price is fixed at $15,000. No encumbrances were to be originated or assumed. No deferred payments of the purchase price are intimated. The parties expressly acknowledged that they had negotiated a "distinctly understood" agreement. Vide, Kastens v. Ruland,94 N.J. Eq. 451; 120 Atl. Rep. 21.
In its contextual environment, too much pretension, I think, is sought to be conferred by the defendant upon the sentence "The terms of said sale to be determined and settled by the parties hereto at the time of the exercise of the option." What terms? Presumably, the time of the consummation of the sale, the adjustment of taxes and insurance premiums, all of which are otherwise governed by law. R.S. 54:4-56; N.J.S.A. 54:4-56;Millville Aerie, c., v. Weatherby, 82 N.J. Eq. 455;88 Atl. Rep. 847; Cavanna v. Brooks, 97 N.J. Eq. 329;127 Atl. Rep. 247; Moran v. Fifteenth Ward Building and Loan Association,supra. I conclude that neither party contemplated that the additional terms would be substantive but that they would be serviceable and instrumental in effectuating the bargain. For example, it was probably anticipated that in the deed of conveyance the demised premises would be more definitely described by metes and bounds. Yet where the lands are designated with reasonable certainty, the court will have the metes and bounds ascertained and settled. Cooper v. Carlisle, 17 N.J. Eq. 525,533.
A communication addressed to the complainant by the president of the defendant company on December 29th, 1945, sustains several factual inferences, among which is the inference that the additional "terms of said sale" were not matters of particular consequence to the defendant. He wrote: "A few days ago, I received your letter of December 20 and another letter of the same date, to the same effect, from Mr. Crawford Jamieson. I tried to get in touch with my attorney, Mr. David T. Wilentz, in order to have him prepare the agreement. I found, however, that he has gone to Florida *Page 175 
and will probably not return until shortly before January 15. One of the young men in the office of Mr. Wilentz suggested to me, and asked me to pass on the suggestion to you, that you have your attorney prepare the agreement and send it on to me so that I may submit it to Mr. Wilentz after his return." Indeed, after hearing the parties I am not now aware of any irreconcilable variance in respect to any material and important term of their agreement. The disinclination of the defendant to perform the option agreement is not in truth attributable to the lack of a formal contract. Upon the execution of the lease the defendant fully intended to be bound by the ample and declaratory terms embraced by the instrument.
The defendant also protests that the complainant is seeking to acquire pursuant to the bill a larger parcel of real estate than that designated in the lease.
The demised premises were described in the lease as follows: "* * * the lands and premises known as 29-51 and part of 53 Pashley Avenue, Trenton, New Jersey, consisting of a one-story garage, a two-story building, an open shed together with a fifteen feet wide driveway adjacent to the westerly end of the open shed on said lands, which driveway shall run from the rear line of said shed to Pashley Avenue and parallel to the said two-story building." Reasonable certainty in the description is all that is required. Brooks v. Wentz, 61 N.J. Eq. 474; 49 Atl. Rep. 147.
The easterly and westerly boundary lines of the property are nevertheless controversial subjects. A circumspect and studious examination of the exhibits portraying the objective physical conditions of the property induce me to reject the criticisms of the defendant as entirely too frail.
Sidelong the easterly wall of the one-story building extends an alley ten feet in width. Conspicuous in the alley is an open stairway leading downward to a room in the basement of the building. The alley has been assessed by the city taxing authorities according to the official tax map as a part of No. 29 Pashley Avenue. During the tenancy the complainant installed and maintained in the alley a structure *Page 176 
described as an "exhaust chamber." I am constrained to conclude that the parties regarded the alleyway as appurtenant to the demised premises. The "open shed" situate at the southwesterly extremity of the one-story building was remodeled and enlarged during the period of the tenancy. The end of the shed as it formerly existed was adopted by the parties as a monument for the admeasurement of the "driveway" and the present establishment of that point has encountered some discordant convictions. The proofs, however, dispel all reasonable doubt. The plans prepared for the alteration and improvement of the shed by the architect in March, 1944, accurately locate the end of the former structure. The preponderance of the pertinent testimony of those familiar with the premises in their former state is corroborative.
In determining the area intended to be encompassed by the option, the letter addressed by the president of the defendant company to Mr. Walsh under date of February 21st, 1944, and the sketch therein enclosed have been exceedingly influential. I am aware that the author of the communication denies that the sketch here produced is the one that he forwarded. He is mistaken. The weight of the evidence conquers his denial.
In his letter of February 21st, 1944, he stated: "The option on the land and building will provide for a driveway starting at the furtherest end of the shed to the street front parallel to the building, this will give ample space for a driveway on that side." The sketch to which he specifically referred in the letter, he presented as illustrative in that, as he explained, it indicated the buildings "in solid lines and the land in spaced lines."
I am persuaded that the narrow strip of open land characterized as "an ample space for a driveway on that side" was likewise intended to be appurtenant to the demised premises and hence embraced by the option.
A decree will be advised in accordance with the prayer of the bill. *Page 177