SAMUEL H. RICHARDS

*v.*

WILLIAM B. KNIGHT.

·[Filed October 31st, 1902.]

1. Specific performance of a contract to purchase realty will not be decreed against the purchaser if there is such doubt as to the seller's ability to convey a good title that the purchaser, if compelled to perform, would be subjected to the hazard of litigation.

2. A doubt precluding specific performance exists if the seller's title depends on the determination of a legal question not settled by previous decisions, or concerning which there are *dicta* of weight indicating that courts might differ as to its determination.

3. In a suit by the vendor in a contract for the sale of realty, to compel specific performance by the vendee who refuses to perform on the ground that there is doubt as to the vendor's ability to convey a good title, the court, if the doubt arises in ascertaining the construction of some ill-expressed instrument, will not determine the legal effect thereof and compel the purchaser to take the title.

On bill for specific performance. On motion to strike out bill.

The bill of complaint is filed to compel the defendant specifically to perform an agreement alleged to have been entered into by him for the purchase from the complainant of a farm situate in Logan township, Gloucester county, to be conveyed by a good title, clear of all encumbrance.

The bill alleges that the complainant tendered to the defendant a general warranty deed, which was efficient to convey a fee-simple estate in the farm in question, and that the defendant refused to accept the conveyance and to perform his contract upon the sole ground that the complainant and the complainant's mother, who joined in the deed, could not make a good title to the farm, because of the provisions of the will of Samuel Richards, under which the complainant received the title.

Richards *v.* Knight.

The bill of complaint sets forth the will of Samuel Richards *in extenso,* in these words:

"I, Samuel Richards, of the township of Logan, in the county of Gloucester and State of New Jersey, being of sound mind, memory and understanding, do make and publish this my last will and testament in manner following, that is to say:

"*First.* It is my will and I do order that all my just debts and funeral expenses be duly paid and satisfied as soon as conveniently can be after my decease.

"*Second.* I give and bequeath all of my personal property and devise all of my real estate to my beloved wife, Sarah A. Richards, for and during her natural life or while she remains my widow.

"*Third.* After the decease of my said wife, or if she marries again, then after her marriage, it is my will and I do order that all of my said property, both real and personal (or what remains thereof), be given to my son, Samuel Horace Richards.

"*Fourth.* In case that my son, Samuel Horace Richards, shall depart this life before the decease of my said wife without leaving any lawful issue, then it is my will and I do order that all of my property, of whatever kind that remains at her decease, shall be divided equally among my legal heirs.

"*Lastly.* I hereby appoint my beloved wife, Sarah A. Richards, executor of this my last will and testament.

"In testimony whereof I have hereunto set my hand and seal this twelfth day of August, in the year of our Lord one thousand eight hundred and eighty-two.

"SAMUEL RICHARDS [SEAL]:

"Signed, sealed, published and declared by the said Samuel Richards to be his last will and testament, in the presence of us who were present at the same time and subscribed our names as witnesses in the presence of the testator.

"BENJAMIN F. M'COLLESTER,
"JAMES H. HEWES."

The will was proven November 26th, 1894. The bill alleges that the testator left no more than enough personal property to pay his debts and funeral expenses. It further appears by the bill that Samuel H. Richards, son of the testator, is married and has lawful issue living.

The defendant, by notice under rule 213, moves to strike out the whole bill. The parties have submitted the matter upon briefs.

*Mr. Charles A. Wolverton,* for the complainant.

*Mr. William B. Knight,* defendant *pro se.*

GREY, V. C.

The defendant's motion is to strike out the whole bill, under rule 213, and is, in substance, a demurrer to the equity of the bill, upon the ground that, admitting all its allegations, the complainant exhibits no right to the only relief sought, viz., a decree that the defendant shall accept a conveyance of the farm in question from the complainant and his mother. The defendant contends that the statements in the bill of the derivation of their title show that they have no power to convey a good title—that is, an indefeasible estate in fee-simple.

The single object of this bill is to compel the defendant to accept a conveyance of the farm in question in performance of his contract to buy it. This court will not decree specific performance if there be, as to questions of fact, such doubt as to the complainant's ability to convey a good title that the purchaser, if compelled to perform, would be subjected to the hazard of litigation. *Lippincott* v. *Wikoff, 9 Dick. Ch. Rep. 114.*

If the doubt raised depends only upon a question involving the application of general principles of law, it is the practice of courts of equity to decide the point of law in the suit for specific performance. In such cases the doctrine is that specific performance should not be decreed if there is reasonable ground for saying that the question is not settled by previous decisions, or if there are *dicta* of weight which indicate that courts might differ as to the determination of the point involved. *Lippincott* v. *Wikoff, 9 Dick. Ch. Rep. 120.* One of the categories in which the courts decline to compel specific performance is where the doubt as to the vendor's power to carry a good title arises in ascertaining the true construction and legal operation of some ill-expressed and inartificial instrument. *Alexander* v. *Mills, 6 Ch. App. 131.*

The complainant insists that there are no doubtful questions of fact in this case, and that the bill of complaint shows, as a

matter of law, that the deed proffered conveys a good title for several reasons.

*First.* Because Sarah A. Richards (the widow), by the true construction of the will, has an absolute power of sale, which will convey a fee-simple. His argument is that such a power, though not expressed in the words of the will, must be implied from the testator's devise to Sarah when considered with the words of the devise over after her death. He gives Sarah all his personal property and all his real estate during her life or widowhood, and after her decease or marriage orders that all of both real and personal (*or what remains thereof*) be given to his son, Samuel H. Richards, the complainant.

The complainant contends that, by the words *"what remains thereof,"* used by the testator in the third clause, and similar words in the fourth clause, the testator has indicated an intention that the widow should have an unlimited power of disposal of both the real and personal property; that it is only what remains after such disposal by her that comes to the son, or to the legal heirs of the testator. He cites the case of *Rodenfels* v. *Schumann, 18 Stew. Eq. 387,* where Chancellor McGill declared that the words "what shall remain," appearing in the will there construed, did not refer merely to the residue of the personal property, which was consumable by use, but should, in that case, bear a broader meaning, and include in the residue intended by the testator the real estate as well, and thus imply an intent to give to the widow a power of alienation of the whole estate.

An examination of the Rosenfels judgment will show that the whole discussion by the chancellor was based upon peculiar circumstances of that case. In that will the quantity of interest given to the widow was indeterminate, and the question under consideration was the extent of her estate. On the face of that will words were used which indicate the testator's purpose that both the real and personal should be devoted to the sole use and benefit of his wife. He evidently intended that she should have power to consume all his estate, but he so phrased his will that he gave "what remained" to his brothers and sisters. The chancellor held that such a gift passed a fee to the wife, and that her deed cut off the limitation over.

In the case presently under consideration the extent of the estate given to the wife is expressly defined, by the very words of the will, to be but a life estate, or one *durante viduitate.* There are no words expressly giving any power of disposal to her. If any such authority is found in the will, it must be raised by implication. If so raised, it must necessarily (in view of the fact that the testator has in no way disposed of the proceeds from any disposition made by the wife) give to the wife an absolute fee-simple estate in the whole property.

The phrase "what remains thereof," as used in the third clause of the will, has been so placed by the testator in its relations to the word "personal" that it may fairly be construed to refer only to the personal property. His words are: "I order that all of my said property, both real and personal (or what remains thereof), be given to my son," &c. In the preceding gift to the wife the testator places his gift of the personal first, but in the gift to the son he changes its order and places it last, so that it is immediately in connection with the words "what remains thereof."

The phrase "what remains," &c., is somewhat differently used in the fourth clause, for it is there directed: "I do order that all of my property *of whatever kind that remains* at her decease shall," &c. The complainant insists that this must be construed to raise an implication giving to the wife an absolute power to sell the real estate in fee.

The testator's estate consisted of both real and personal property. He expressly limited the wife's interest to an estate for life. Personal property would naturally be worn out or expended in its use, and the words of disposal were, in all probability, intended to apply to that part of the gift. *Downey* v. *Borden, 7 Vr. 469 (Court of Errors and Appeals).* The expression, in the fourth clause, "of whatever kind," &c., if it suggests an inference that the testator intended his wife to have a power to dispose of both real and personal, without accountability for the proceeds, thus giving her an absolute estate, is repugnant to the express words whereby the testator limits the wife's interest to an estate for life, and to his evident purpose

that, on the termination of her estate, the property should go to his son, if living, or if not, to the testator's heirs-at-law.

The words of a will, where they have a clear and definite meaning, should be given their full natural effect. If, from other words, an implication may be drawn which would be repugnant to the expressed intent of the testator, and they cannot be reconciled, then the expressed intent of the testator should prevail, and the inference which would defeat his purpose ought not to be drawn.

In the present case the raising of a power of absolute disposal in the wife would necessarily, in the absence of any expression in the will directing what should be done with the proceeds in any conversion of the property under the power, give to her an absolute interest in the whole estate.

It would, by an implication—an inference drawn by the court—nullify the express words of the will limiting her interest to a life estate.

This phase of this case is, in my view, controlled by the above-cited decision (*Downey* v. *Borden*). In that case there was a gift to a widow of "one-third of all my estate that may remain at my death for to dispose of as she may see proper." The gift included personal property as well as real estate. The court of errors held that the words "that may remain at my death" naturally refer to such personal estate, citing cases. This *Downey Case* is referred to by the chancellor in the Rodenfels decision as the leading authority on the point in question. His discussion of the *Rodenfels Case* is directed to show wherein the circumstances of that case differ from the *Downey Case*, and make the latter judgment inapplicable.

The construction which refers implied powers of sale in such cases solely to personal property, where that interpretation can be given, seems to be accepted by the courts, whether the different kinds of property are separately mentioned or grouped together by some such general words as "all my estate." In the *Downey Case* the gift under discussion was "to my beloved wife one-third of all my estate that may remain at the time of her death," and, in fact, included both real and personal estate. In *Naundorf* v.

*Schumann, 14 Stew. Eq. 15,* decided by Chancellor Runyon, the words of gift were *"all my property, both real and personal,"* to the widow, and, after her death, "what shall remain to be disposed of in manner following," &c. In both of these cases the court refused to raise an implied power in the widow to sell the real estate, holding that the inference of a power of disposal to be drawn from the use of the phrase "what shall remain," &c., was satisfied by applying it only to the personal property. The same disinclination to imply powers of disposition where the words of a will do not clearly manifest such a purpose on the part of the testator, appears in *Wilson* v. *Wilson, 1 Dick. Ch. Rep. 324, 325.*

In view of the fact that, in the present case, the gift to the wife expressly limits her interest, by apt words, to a life or lesser estate, and that no power of sale is, in terms, given to her, the phrases "what remains thereof," in the third clause, and "all of my property of whatever kind that may remain," in the fourth clause, should not be construed as to give to the wife an absolute power of sale over the real estate.

The *second* ground upon which the complainant insists that he is able to convey a good title is that even if Sarah has not a power of sale of the farm, still the title conveyed by the complainant's own deed would be good.

The complainant's brief claims that he "takes, under the will, a vested estate in fee, subject to an executory devise over in case of his dying without issue before his mother."

This construction of the devise to the complainant, even if it be conceded to be correct (and it will be hereinafter discussed), cannot be held to show in the complainant such a title as a court will compel a purchaser to accept. An estate which, though vested, is subject to be defeated by the happening of events of an uncertain and uncontrollable nature, is not such a good and merchantable title as should be forced upon a purchaser. This would give the purchase-money, the equivalent of an indefeasible fee-simple estate, to the vendor, and force the vendee to accept therefor the conveyance of an estate which, though vested, might be taken from him by subsequent circumstances which could neither be controlled nor prevented.

The complainant, however, contends that, under the terms of the will, "subject to the life estate of the widow, all other estates are united in the complainant." He claims to be the holder of a vested fee, subject to an executory devise over to the testator's heirs, and, also, to be that heir of the testator in whose favor the executory devise is limited; that his conveyance will, therefore, pass both the vested fee and the estate limited by executory devise to which the fee is subject.

This contention involves an inquiry into the nature of the estates given over by this will. It is manifestly drawn so that it is difficult to declare with certainty what the intent of the testator really was. The gift of an estate for life, or *durante viduitate*, to the wife is definitely expressed.

The devise in favor of the son is in the third clause, in the words above quoted. The first point to be considered is whether this devise passed to the son an interest which vested on the death of the testator. The words used by the testator are not those of present gift. This might not be of conclusive importance if, from the whole will, it appeared that the testator intended presently to give his estate in fee to his son, subject to a life estate in his wife, and that the words postponing the gift to the son were simply intended to let in the wife's life estate.

This is not the effect of the testator's expression of his purpose. He directs that, after his wife's death or marriage, the estate should be given to his son. Neither of these events has yet happened.

That the testator did not intend the son to have his estate at all events, is plainly shown by the fourth clause of his will. He there declares that if the son should depart this life before the decease of his (testator's) wife, without leaving any lawful issue, then the estate should be divided among his (the testator's) legal heirs. This shows that, at the period named—*i. e.*, the death of his wife—the testator contemplated two possible dispositions of his estate—one to his son, if he were then living; the other to his (the testator's) heirs, if the son had then died without issue.

The heirs to whom the testator meant this limitation over

to go could not have included his son (the complainant), because it was only at and upon the son's predeceasing his mother, without leaving issue, that the testator's heirs were to take. The son must be dead in order that the testator's heirs may take. If they thus take, it will be direct from the testator, under his devise, and not in any way through the son. The son's covenant of warranty would, therefore, not affect the title of the testator's heirs, for they would derive their title, not from the son by descent, but directly from the testator by devise. The warranty would have no estate of the warrantor to which to attach. It is impossible to know, until the death of the life tenant, who may ultimately take the fee.

A varying phase of the effect of this will might come about if the widow should marry while the son is living. Her estate would then terminate and his would begin. The fourth clause of the will takes no cognizance of this possibility. It simply declares that if the son shall predecease the wife, without leaving issue, the estate shall be divided among the testator's heirs. To give effect to the whole will the construction should probably be that, if the wife marries, the estate goes to the son, in fee, subject to be defeated, in favor of testator's heirs, by the son's dying, without issue, in the lifetime of the wife.

None of the constructions above suggested of this inaptly-drawn will is so free from doubt that they should be made the basis of a decree compelling a purchaser to take the title of the devisees at the present time. The case is, I think, one of that class referred to by Lord-Justice James, in *Alexander* v. *Mills, ubi supra,* as an exception, when he declared that where difficulty and doubt arise in ascertaining the true construction and legal operation of some ill-expressed and inartificial instrument, the court, on application for specific performance, will not determine the legal effect of the instrument and compel a purchaser to take the title.

The uncertainties of the construction of the will upon which the complainant's title in this case depends are such that the acceptance of a conveyance of that title ought not to be compelled.

A decree will be advised dismissing the bill of complaint.