The complainant is a resident of Atlantic City, New Jersey, and the widow of John L. Kelly, who died prior to December 16th, 1927, having made his last will and testament, in which he gave and devised his entire residuary estate to the complainant. At the time of his death, Kelly was seized of various parcels of real estate situate in the county of Atlantic and elsewhere, which were devised to the complainant under the residuary clause, in addition to which she owned various parcels of real estate in the county of Atlantic.
On or about the 16th day of December, 1927, she entered into an agreement with the said defendant, Guarantee Trust Company, which agreement recited that she desired *Page 131 
"to create a trust of all the real estate devised to her under the will of John L. Kelly, which will has been duly probated by the surrogate of Atlantic county, together with certain other real estate belonging to the party of the first part, as hereinafter set forth, and for the purposes hereinafter mentioned.
"Now, therefore, this indenture witnesseth, that in consideration of the premises, the mutual covenants herein contained and of other good and valuable considerations, and of the sum of one dollar, to her in hand paid by the trustee, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, the party of the first part has granted, bargained, sold, assigned, transferred and set over and by these presents does grant, bargain, sell, assign, transfer and set over to the said trustee, its successors and assigns, the following described real property:"
(Here follows the descriptions of six parcels of land.)
"Together with the appurtenances and all the estates and rights of the party of the first part thereto, to have and to hold all and singular the above granted real estate to the said trustee, its successors and assigns, in trust, nevertheless for and upon the uses and purposes hereinafter set forth:
"First: To receive the issues, rents and profits and proceeds of the sale or sales of said real estate, and to apply the same as set forth in a certain supplemental trust agreement between the parties hereto, bearing even date herewith, which said agreement is made a part hereof, to all intents and purposes as if the same were incorporated in this instrument and further to grant, bargain and sell and convey any or all of said property upon such terms and conditions as to said trustee may seem advisable, with no liability on the part of the purchaser of any of said real estate, to look to the application of the purchase-money, giving and granting to the said trustee full power and authority to mortgage or pledge any of said property in such manner and on such conditions as to said trustee may seem proper.
"Second: At the death of the said party of the first part, to assign, transfer and set over the property so held under this trust to such person or persons or to dispose of the same in such manner as the party of the first part in and by her last will and testament, duly admitted to probate, shall direct, and in the absence of such direction, to assign, transfer and set over said property or the proceeds of the sale of the same, to such persons as would be entitled to receive said real estate under the intestate laws of the state of New Jersey."
Upon the same day, the parties thereto entered into another indenture, supplementing and confirming the deed of trust between the parties thereto, bearing even date and intended to be forthwith recorded in the clerk's office of Atlantic county, as follows: *Page 132 
"Whereas, John L. Kelly, late of Atlantic City, New Jersey, departed this life testate, and by his will duly admitted to probate by the Surrogate of Atlantic County, gave and devised his entire residuary estate to his widow, the said party of the first part, and whereas, said estate is without sufficient immediate funds to pay and satisfy the indebtedness of the said John L. Kelly, and to conserve it against possible loss, and whereas the said party of the first part has applied to the said Trustee to finance said estate, together with certain obligations of the Kelly Motor Company, a corporation of New Jersey, in which she is interested, and the said Trustee has agreed to do so upon the terms hereinafter set forth.
"Now therefore, the said party of the first part in consideration of the premises, the mutual covenants herein contained and of other good and valuable considerations, and of the sum of one dollar, to her in hand paid by the said Trustee, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, the party of the first part has granted, bargained, sold, assigned, transferred and set over and by these presents does grant, bargain, sell, assign, transfer and set over the real and personal property described in the Schedule attached hereto, and made a part hereof, and known as Schedule "A," together with the appurtenances and all the estate and rights of the party of the first part thereto.
"To have and to hold all and singular the above granted real and personal property to the said Trustee, its successors and assigns, in trust, nevertheless, for and upon the following uses and purposes, and subject to the terms, conditions, powers and agreements hereinafter set forth.
"First: To receive, hold, manage, sell, invest and reinvest the same and every part thereof in the manner hereinafter specified, and to collect, recover and receive the rents, issues, interest, income and profits thereof, together with the proceeds of the sale or sales of said real estate and personal property, and to apply the same as follows:
"In payment and satisfaction of any and all loans made to the said party of the first part by the said Trustee either in its capacity as said Trustee under this indenture or in its capacity as a banking corporation independently of this agreement, and in paying and liquidating all the indebtedness of the said John L. Kelly, and any and all mortgages upon the real estate described herein, and any and all loans made to Kelly Motor Company and endorsed or guaranteed by the said party of the first part, or by the said John L. Kelly, any and all obligations of said Kelly Motor Company now existing, or the renewals of said obligations, or which in any manner may be assumed or taken over by the said Trustee.
"To pay all contingent liabilities of the said John L. Kelly, which his estate may be called upon to pay.
"To pay all taxes, interest, insurance, municipal charges, and any and all other expenses incident to said properties and the care and custody thereof.
"To pay to the said party of the first part, either from the principal or income in the hands of the Trustee, or to loan to her, a sum not to exceed six thousand ($6,000) dollars per annum, until *Page 133 
all the obligations of the said John L. Kelly which may be proved as legal claims against his said estate, are satisfied, except such mortgages as said Trustee may elect to allow to remain on the real estate owned by the said John L. Kelly, at the time of his death, or, on the real estate now owned by the said party of the first part, after which time and upon settlement of the account of the Executors of the Estate of John L. Kelly, to pay all the net income from said trust to the said party of the first part, during her life.
"At the death of the said party of the first part, to grant and convey whatever may remain of said real and personal property, to such person or persons or to dispose of the same in such manner as the said party of the first part may by her last will and testament, duly probated, authorize and direct, and in the absence of such direction, to assign, transfer and set over said property to such persons as would be entitled to receive the same under the intestate laws of the State of New Jersey, for the descent of real estate and the distribution of personal property.
"Second: The Trustee is further authorized to have the absolute management and control of the real estate and personal property herein enumerated and described, with full power to pledge, mortgage, lease, sell and convey the same or any part thereof at any time and for any price as in its discretion it may deem to be for the best interest of this trust, with no liability on the part of the purchaser of any of said real estate or personal property, to look to the application of the purchase money, and said Trustee is to be in no wise responsible to the said party of the first part, or her heirs or assigns, for any error or mistake of judgment concerning the time or place of the sale of any of said real estate or personal property, provided, however, that a written notice of the intention to sell shall be mailed to the said party of the first part to her last known post office address, but without responsibility for its actual receipt by her; the proceeds of any such sales to be applied as hereinbefore set forth.
"Upon the sale of any of the property herein described, the Trustee shall have power to invest the funds that may be in its hands in such manner and upon such securities as may meet with the approval of the said party of the first part.
"Third: The Trustee shall be entitled to receive as compensation for its services in the administration of this trust, a fee of twenty-five thousand ($25,000) dollars, to be paid over a period of three years in semi-annual installments, and after the expiration of said three years, a commission of 5% per annum upon the income received, which first named sum said Trustee is authorized to deduct from any funds that may be in its hands, and said latter fee is to be deducted from the income payable to the party of the first part as herein set forth.
"Fourth: The Trustee is also authorized in the discharge of its duties, to employ counsel and agents, if, in its judgment, it becomes necessary or advisable, and to pay them reasonable compensation, for which it shall be entitled to reimbursement, and for such other expenses and charges as it may deem necessary and proper to incur.
"Fifth: The party of the first part covenants and agrees to make, *Page 134 
execute and deliver in due form of law, such other and further assignments, conveyances or other instruments as the Trustee may deem requisite or necessary to effectuate the purposes hereof.
"Sixth: The Trustee is further authorized and empowered to pay all taxes which properly may become payable from time to time under the laws of the United States, or of any State, County or Municipality on said trust property or for any transfer thereof, or transaction affecting the same and to affix and cancel such tax stamps as may be required in accordance with the provisions of said laws.
"Seventh: Notwithstanding anything to the contrary herein contained, the party of the first part may, by instrument in writing, executed and acknowledged in the manner required for a deed of real property, so as to enable it to be recorded in the State of New Jersey, and delivered to the Trustee, modify or alter in any manner or revoke in whole or in part, this indenture and the trusts then existing, at any time during the continuance of this trust, provided all obligations due the said Trustee shall have been satisfied, including its fee of twenty-five thousand ($25,000) dollars for services as herein set forth, and in case of such revocation, said instrument shall direct the disposition to be made of the trust fund or of the portion thereof affected by such revocation, and the Trustee shall make, execute and deliver such instruments, if any, and make such conveyances and transfers of property as may be necessary or proper in order to carry the same into effect, and no one shall have any right, interest or estate under this indenture except subject to the proper modification, alteration or revocation thereof.
"The party of the first part hereby expressly reserves to herself the privilege of increasing the principal of the trust fund from time to time by adding thereto property and securities, which the Trustee shall receive, hold, sell, invest and reinvest in the same manner as above specified in respect to the property and securities forming the original trust fund, which said additional securities will be subject to all the conditions in this trust agreement recited in relation to the securities and property forming said original trust fund.
"Eighth: The Trustee, by joining in the execution of this instrument, signifies its acceptance of the trust.
"Ninth: This instrument is made in duplicate, each of which is an original, but both taken together shall be deemed one and the same instrument."
For some years after the execution of said indentures, the trustee paid to Mrs. Kelly the sum of $6,000 per annum, but since the 1st day of February, 1930, it has refused to pay the said sum of $6,000 or any part thereof, and has not loaned to the said complainant a sum of money not to exceed $6,000 per annum or any part thereof.
One of the prayers of the bill is that the said Guarantee *Page 135 
Trust Company, trustee, as defendant, may be decreed to pay to the complainant, either from the principal or income in its hands as trustee, or loan to the complainant a sum not exceeding $6,000 per annum, from the 1st day of February, 1903, until such time as all of the obligations of said John L. Kelly, deceased, which may be proved as legal claims against his estate, be satisfied and the account of the latter has been settled. It was proven that legal claims against the estate are still unsatisfied and that the account of the said estate has not been settled.
Mr. Sypherd, the trust officer of the defendant company, testified that the contracts "were prepared by Judge Cole and myself, in conjunction. I think I drew probably the original draft of it, I am not sure about that."
The entire issue is the meaning of that part of the agreement which says "to pay to the said party of the first part, either from the principal or income in the hands of the trustee, or to loan to her, a sum not to exceed six thousand ($6,000) dollars per annum, until all the obligations of the said John L. Kelly which may be proved as legal claims against his said estate are satisfied."
The defendant contends that no demand or request has ever been made upon them to make such a loan, and that they were not, under any circumstances, bound to loan any funds to Mrs. Kelly. It is sufficient to say that the bringing of this suit is a demand.
I have not been assisted by either counsel by the filing of briefs.
There is no ambiguity in the language. The trust company was obligated to pay to Mrs. Kelly, either from the principal or the income in the hands of the trustee, or to loan to her a sum not to exceed $6,000 per annum. It either means what it says or nothing. If I am correct in this statement, then it is unnecessary to proceed further, as construction can only be employed for the discovery of the true intent and meaning of an instrument, and when the language is plain there can be no construction, because there is nothing to construe. 12 C.J.1302. Interpretation differs *Page 136 
from construction in this: That it is used for the purpose of ascertaining the true sense of any form of words; while construction involves the drawing of conclusions regarding subjects that are not always included in the direct expression.
In 13 C.J. 545, the rule is stated:
"Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage. But this rule, it is said, is the last one which the courts will apply, and then only if a satisfactory result cannot be reached by the other rules of construction."
The late Mr. Justice Garrison, in Crane v. McMurtrie
(Court of Errors and Appeals), 77 N.J. Eq. 545, says (at p.549):
"* * * the well established rule that, in the construction of private grants, words equally susceptible of two meanings shall be taken most strongly against him who uses them. `It is a maxim in law that every man's grant shall be taken by construction of law most forcible against himself.' Co. Litt. 183a.
"The reason given for this rule in Cruise Dig. tit. 32 Ch. 20¶ 13, is: `That the principle of self interest will make men sufficiently careful not to prejudice themselves by using words of too extensive a meaning; and all manner of deceit is hereby avoided in deeds; for men would always effect ambiguous expressions if they were afterwards at liberty to put their own construction on them.'
"To the same effect is Shep. Touch. 87: `When a party introduces an expression having two meanings, one larger the other more limited, he cannot afterward set up the narrower construction,' is the text of a note to Elphinstone on the Interpretation of Deeds, page 94, which the American editor has illustrated by a large number of citations. It may be freely admitted that this rule does not apply where a different construction is made necessary by the context or *Page 137 
where to apply it would be to work a wrong, and also that contemporaneous circumstances may lead to its rejection. In the case in hand, however, none of these conditions is present to militate against giving to this rule its full effect. There is no context to modify the terms employed by the grantor and no wrong done by construing such terms according to legal rule; while the contemporaneous circumstances run with the rule rather than against it." Hilsinger v. Schwartz, 99 N.J. Eq. 288; Sheehan
v. MacMurray, 109 N.J. Eq. 564.
The result must follow that if there is no ambiguity in the contract the complainant is entitled to relief. If there is ambiguity, the construction of the contract leads to the same result, and the complainant is entitled to relief.
A decree will be advised in accordance herewith.