Rosita M. Micheloni, complainant-respondent,

*v.*

Troy Hills, Incorporated, defendant-appellant.

[Argued May 28th, 1936. Decided October 2d, 1936.]

*Messrs. Kunzman & Kunzman (Mr. Herbert J. Hannoch* and *Mr. Morris Weinstein,* of counsel), for the appellant.

*Mr. Frank A. Palmieri (Mr. Frank H. Brown,* of counsel), for the respondent.

The opinion of the court was delivered by

Heher, J.

On October 31st, 1933, the defendant corporation contracted in writing to sell to complainant a lot of land and a

three-room log cabin thereon erected for the price of $1,945, payable (after deducting the down payment of $500) in equal monthly installments of $25, commencing January 1st, 1934, with interest at six per cent. per annum, and, upon performance of the covenants therein contained and payment in full of the purchase price, to convey the premises to her by warranty deed, free and clear of all encumbrances. On November 21st, 1933, the vendor agreed, in writing, to make certain alterations and additions to the cabin, and the vendee undertook to pay, two days later, the sum of $251 therefor, and agreed that, in case of default, "the same shall be added to the" basic contract and "become a part thereof." Complainant now seeks specific performance of the contract so made. During the ensuing month of December, the vendee entered into and still is in possession of the premises. The bill alleges that she thereafter made "permanent improvements thereon at a considerable expense," but this allegation has not been sustained by evidence.

Claiming certain fraudulent representations, both as regards the condition of the land and building and the existence of certain house services, and faulty construction work under the supplemental contract, the vendee made no payments under the primary contract, and but $100 on the second; and there ensued a course of litigation, to be chronologically reviewed, that culminated in the decree under consideration.

On April 7th, 1934, the vendor, asserting the relation of landlord and tenant and default by the vendee in the payments required by the contract, served upon her notice to quit the premises, and thereafter instituted dispossess proceedings in the district court of the *locus*. While the formal record is not before us, it seems to be conceded that this action was dismissed on the ground that the asserted relationship did not exist.

On June 9th, 1934, the vendee, alleging "fraud and conspiracy," filed a bill in chancery, praying a rescission of the contract and the repayment of all moneys "advanced" by her thereon, and a restraint against the institution of any suit at law or equity by the vendor until the adjudication of the pleaded cause of action.

On June 16th, 1934, the vendor instituted an action in ejectment in the supreme court. Thereupon, at the instance of the vendee, the vendor was ordered to show cause why it should not be restrained from proceeding with the action in ejectment until the termination of the rescission suit. This order was finally discharged. This record is not formally before us, but it seems to be agreed that the discharge of the rule was rested upon a finding that the right of rescission did not exist under the circumstances. The suit does not seem to have been prosecuted to final hearing. Thereupon, an answer was filed in the ejectment suit. The defense interposed was payment of the accrued installments, either directly or in the form of expenditures made necessary by the vendor's asserted fraudulent conduct.

On August 28th, 1934, the vendee instituted in the supreme court an action for damages claimed to have ensued from the alleged false representations. This action was pending at the time of the filing of the bill herein, and, as will be hereafter pointed out, the chancellor assumed jurisdiction to assess damages claimed to have resulted from the asserted fraud.

The issue joined in the ejectment suit came on for trial at the Morris circuit before Judge Lawrence. In the course of the presentation of the plaintiff's case, he ruled that, in respect of the stipulated installment payments, there had been a "technical default;" that the vendee's claim of payment involved an "equitable defense," and that the vendee was "in the wrong court with such a defense." Noting that the vendee "has been willing at all times to deposit the amount of money in dispute * * * in the hands of this court," he held the controversy to be one of equitable cognizance exclusively, and, declining to hear the pleaded defense, he suggested that the vendee invoke the jurisdiction of equity, and thereupon directed the jury to return a verdict for the plaintiff, and restrained execution of the consequent judgment for a specified time, to afford the defendant "sufficient time to file her bill in chancery." The *postea* so conditioned the judgment.

On November 28th, 1934, within the prescribed time, the bill herein was filed. It alleges fraudulent representations,

and asserts a right in equity to "credit for the moneys advanced for the defendant corporation" for uncompleted work, and to reimbursement for damages sustained as the result of the claimed misrepresentations. It also avers, as stated, the making of permanent improvements at a considerable cost. It alleged the vendee's possession of the premises since December, 1933, and her constant and unavailing efforts over a long period of time to effect an adjustment of the matters in controversy, and her willingness then, as always, to deposit in court moneys in sufficient amount to guarantee the payment of such sum as should eventually be found to be due. There were prayers for an accounting and specific performance, and the vendee deposited with the clerk of this court the sum of $1,596, the balance claimed by her to be due upon full performance of the contract by the vendor.

The final decree directed specific performance. There were allowances to complainant, to be credited on the purchase price, of $585, the cost of a retaining wall and fill deemed necessary to effect adequate drainage, and the erection of "a concrete [not imitation] trench wall around and under the entire cabin," as provided by the secondary contract referred to; $100 paid under the contract last referred to; and $300 "for estimated damages" consequent upon the pleaded fraudulent representation. The decree embodied a permanent restraint against execution of the judgment in the ejectment suit, and all other and further proceedings at law or in equity founded upon the matters in controversy.

The vendor appeals from this decree; and it asserts (1) that the vendee's "dilatory conduct and prior inconsistent elections debar her from the remedy of specific performance;" (2) the proofs fail to establish fraud or breach of contract; and (3) even so, there was error in the computation of the damages.

Complainant has not sustained the burden of establishing the making of the asserted fraudulent representations. Accompanied by a personally chosen advisor, an insurance broker of the city of New York, she inspected the premises before the making of the contract. She is a woman of intelligence—a trained nurse by profession. She admits reading

the contract before its execution, in the company of her advisor; and it is therein stated that she "has inspected and accepts" the premises "with the following conditions and modifications—bathtub to be substituted for the shower, porch to be fully enclosed with storm sash and fully screened; the entire cabin to be stained dark;" that "this instrument embodies the entire agreement  *   *   *  and no verbal representation, prior or subsequent to the making of this contract, shall be binding upon the seller or be of any force or effect unless reduced to writing and signed by the parties hereto." Although it was complainant's contention that the defendant represented that the cabin was suitable for year round living, she testified that the supplemental contract was designed to make it habitable in winter. While there was evidence tending to show that the work done under this secondary contract was faulty, the complainant, by the course taken, is precluded from the remedy of specific performance. She refused performance of the primary contract, and brought suit for rescission.

The principle is firmly embedded in our jurisprudence that, in these circumstances, the complainant is regarded as having repudiated in solemn form all obligation under the contract, and is therefore not entitled to the remedy of specific performance in the forum of good conscience. *Claron* v. *Thommessen, 96 N. J. Eq. 650;  Maluri* v. *Fay, Ibid. 472; Rose* v. *Buckley, 98 N. J. Eq. 685.* This remedy rests in the sound discretion of the court, and will not, ordinarily, be awarded when an inconsistent remedy, based on the theory of disaffirmance of the contract, has been invoked, even though unsuccessfully. Here, there was a conclusive election to repudiate the contract, and there was nothing in the vendor's conduct subsequent to the denial of relief in the rescission suit which led the vendee to make improvements, or otherwise irrevocably to change her position, and thus create an equity in her favor demanding the remedy of specific performance. In fact, what the vendee terms "improvements" are hardly classable as such, but in any event were made before the institution of the rescission suit. There is no basis for the claim that under the circumstances it would be uncon-

scionable to permit the vendor to interpose the defense of a prior conclusive election of an inconsistent remedy. The vendor is not chargeable with equitable fraud.

The decree is accordingly reversed, and the cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 11.