On March 16th, 1937, complainants and defendant entered into a contract for the sale of land whereby the complainants were to convey to the defendant two lots known as plots 11 and 12 in section A, Manor Ridge, as laid down on a map entitled "Revised Map of Manor Ridge, Ridgewood, Bergen County, New Jersey, Property of the Manor Ridge Land Company, made by Frank D. Livermore, C.E., February 1st, 1929," and filed in the clerk's office of the county of Bergen, March 19th, 1929, as Map No. 2507. Plot 11 is also known *Page 367 
as plot 4, and plot 12 is known as plot 3, on the village of Ridgewood sewer map (Exhibit C-5). The complainants prepared and presented the proposed contract to the defendant who submitted it to her attorney with instructions to him to insert therein the following: "The Seller covenants that adequate gas, sewer and water mains are laid in the street in front of all of said premises." (Italics mine.) That insertion was made in the contract; the defendant then signed it and delivered it to the complainants who, in turn, signed it and returned a copy thereof to the defendant. (Exhibit C-1.)
Under the terms of the contract, the defendant gave the complainants a "down payment" of $1,000.
Plot 11 is located on Knollwood road and adjoins plot 12 which is located on the corner of Mountain avenue and Knollwood road. Lot 12 has a frontage of seventy-five feet on Knollwood road and then extends around into, and runs along the street line of Mountain avenue for approximately one hundred and twenty-eight and thirty one-hundredths feet. A sewer line runs through Knollwood road for the full width of the property. There is no sewer main in Mountain avenue. There is some testimony that Mountain avenue is considered a main or through thoroughfare.
The complainants tendered a deed (Exhibit C-2) to the defendant. She refused to accept it, because there was no sewer on the Mountain avenue side of plot 12.
The complainants take the position that there are "adequate sewer facilities existing in Knollwood road; and contend they are not required, under the contract, to provide a sewer main in Mountain avenue. This suit is to compel specific performance of the contract.
The defendant answered and counter-claimed. Her answer alleges non-performance by complainants. Her counter-claim seeks the return of the deposit of $1,000, and reasonable expenses incurred for examination of title.
On January 17th, 1938, the defendant filed a supplemental answer, in which she states that a portion of the premises sought to be conveyed were subject to a restrictive covenant which is not mentioned in the contract of sale. The complainants joined issue on the supplemental answer, and assert *Page 368 
that they procured a release of the alleged restrictive covenant (Exhibit C-10).
In August, 1937, before the institution of this suit, the defendant had brought an action in the New Jersey supreme court to recover the deposit money paid under the contract, claiming that there was, in effect, a rescission of the contract of sale because there were no sewer facilities in Mountain avenue where the line of plot 12 runs. That action was restrained through an order made in these proceedings.
The complainants endeavored to emphasize the importance of the meaning, or the implication, of the word "adequate" as used in the covenant relating to the street mains; and, at the same time, they attempted to minimize the use, or meaning of the word "all" in the same covenant, giving little, or no, significance to it. They argue that the gas, sewer and water mains in Knollwood road are "adequate" and sufficient for every purpose.
The defendant insists that the covenant in the contract is comprehensive and admits of no doubt as to its meaning.
When the defendant discovered that there were no sewer mains in Mountain avenue, she caused her attorney to so apprise the complainants, and he communicated with the complainant Abram Vandermade — and with the solicitor of the complainants.
It is conceded that the premises covered by the contract were subject to a restriction which was not included, or referred to, in the contract of sale (Exhibit C-1). The restriction was intended to prevent the erection of any house within eighty-five feet of Mountain avenue (Exhibit C-3, Restriction No. 5 in deed, testimony page 15). The complainants subsequently obtained a release of the restriction (Exhibit C-10), which was never recorded. The defendant, discussing the release, says that "there was no proof offered by the complainants that it would cure the defect in the title or that the Manor Ridge Land Company had any authority to execute such deed or that subsequent purchasers from the Manor Ridge Land Company of other tracts in the neighborhood, after the restriction was placed in 1927 and up to 1937, may not have acquired rights pursuant to that restriction which *Page 369 
might subject the defendant to litigation if she were compelled to take title relying upon that deed."
I am satisfied that contention is sound. While it is true that the complainants, subsequent to the commencement of this suit, secured from the Manor Ridge Land Company, the previous grantor, a quit-claim deed (Exhibit C-10) which purports to release the land from the restriction, however, I am not satisfied that the evidence shows that such deed would vest a clear title in the grantee. The defendant, under the contract, would be entitled to a warranty deed. She is not obliged to accept a title productive of litigation. Richards v. Knight, 64 N.J. Eq. 196;53 Atl. Rep. 452; Van Riper v. Wickersham, 77 N.J. Eq. 232;76 Atl. Rep. 1020.
The defendant very plainly said that she wanted "mains" laid "in front of all of said premises." (Italics mine.) That provision was in the contract when the complainants signed it. They were aware of its existence. Their contention that the mains installed on Knollwood road are sufficient and "adequate" forall of said premises is not persuasive. If the mains were to be limited to Knollwood road, then the contract should have so provided. The premises involved, run on two streets — and the mains should, under the contract, be in front of all of the premises. The contract is clear as to the agreement of the parties. They are presumed to have understood the full meaning and significance of their written language. There is quite a distinction between the words "adequate" and "all." They do not mean the same thing, nor do they convey the same thought. The word "all" signifies "the whole of;" while "adequate" means "legally sufficient." (Webster's New International Dictionary
(2d ed. 1937). In 1 Words and Phrases (1st Series) 312, the following appears:
"`All' means `every one, or the whole number of particulars; the whole number.' State v. Maine Cent. R. Co., 66 Me. 488,510.
"A more comprehensive word cannot be found in the English language, and, when used in the condition of a policy of insurance providing that `all' fraud shall be a cause of forfeiture of any claim under the policy, it has the comprehensive meaning to be gathered from the literal terms in which it is expressed. Moore v. Virginia Fire and Marine Ins.Co. (Va.), 28 Grat. 508, 516, 26 Am. Rep. 373." *Page 370 
 1 Words and Phrases (4th Series) 143:
"`All' means the aggregate, the whole, totality."
See State v. Townley, 18 N.J. Law 311; Heitman v.Commercial Bank of Savannah, 65 S.E. Rep. 590, 597;6 Ga. App. 584.
 1 Words and Phrases (2d Series) at p. 180, contains the following:
"`Adequate' means fully equal to requirements or occasions, commensurate; it does not mean average or graduation.Commonwealth v. Mathues, 59 Atl. Rep. 961, 981, 210 Pa. 372."
In 1 Words and Phrases (3d Series) 260, is the following:
"The word `adequate' some times means that which is equal in size or value; but in its primary and more popular significance nothing can be said to be `adequate' which is not equal to what is required, suitable to the case or occasion, fully sufficient, proportionate, and satisfactory. Elbert County v. Brown,86 S.E. 651, 652, 16 Ga. App. 834."
In 1 Words and Phrases (1st Series) 181, the following appears:
"`Adequate' when used as an adjective qualifying provocation, is a synonym with `legal,' `lawful,' and `reasonable.' State v.Bulling, 15 S.W. 367, 371, 105 Mo. 204."
The mains installed in front of the Knollwood road part of the premises, may have been "legally sufficient" for that part of the premises, but all — or "the whole of" — the premises is not on Knollwood road — the Mountain avenue curb line "claims" one hundred and twenty-eight and thirty one-hundredths feet of it. Words must be accepted according to their true and ordinary meaning and, when litigants refuse to regard them in their plain ordinary sense, then the courts, when appealed to, will decide the issue. I feel the only plain and sensible interpretation of the covenant in question is: that mains should have been "laid in the street in front of all," or the whole of "said premises," on Knollwood road and on Mountain avenue. Brauer v. The Trustees,c., 124 N.J. Eq. 247; Clott v. Prudential Insurance Co., 114N.J. *Page 371 Law 18; 175 Atl. Rep. 203; Bullowa v. Thermoid Co.,114 N.J. Law 205; 176 Atl. Rep. 596; Kelly v. Guarantee Trust Co.,112 N.J. Eq. 130; 164 Atl. Rep. 34.
 In New York Joint Stock Land Bank v. Tomarchio, 117 N.J. Eq. 435; 176 Atl. Rep. 133, it was said:
"The remedy of specific performance rests within the sound discretion of the court and should not be granted unless the right thereto is clearly and conclusively established by the party seeking it. Vacca v. Wilkens, 108 N.J. Eq. 331;Kelleher v. Bragg, 96 N.J. Eq. 25; affirmed, 97 N.J. Eq. 547."
See, also, Jaeger v. Ridgewood Park Estates, Inc., 120 N.J. Eq. 520; 186 Atl. Rep. 724; Micheloni v. Troy Hills, Inc.,121 N.J. Eq. 117; 187 Atl. Rep. 168.
The complainants' right in the instant case is not clearly and conclusively established. An application such as the complainants have made in the instant case is thoroughly discussed in the case of Acquackanonk Building and Loan Association v. Parsonnet,107 N.J. Eq. 48 (at p. 50); 151 Atl. Rep. 865, where the court said:
"The general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt and eager to perform the contract on his part.Meidling v. Trefz, 48 N.J. Eq. 638, 644."
See Degheri v. Carobine, 102 N.J. Eq. 264;140 Atl. Rep. 406.
The defendant agreed to take title if the complainants complied with the sewer covenant contained in the contract of purchase (Exhibit C-1, C-2 and C-3); and, since her offer was refused by the complainants, she, in my opinion, was justified in rescinding the contract. Crane v. Reutschler, 88 N.J. Law 560;98 Atl. Rep. 671, affirmed, 89 N.J. 710; 99 Atl. Rep. 1070;Eustace v. Metropolitan Savings Bank and Trust Co.,115 N.J. Law 541; 181 Atl. Rep. 60; Troum v. Berkman, 109 N.J. Law 165;160 Atl. Rep. 519; Goldstein v. Ehrlick, 96 N.J. Eq. 52;124 Atl. Rep. 761.
Under all the facts and circumstances I feel that the complainants' prayer for specific performance should be denied; and that the defendant is entitled to a decree on her counter-claim for the return of the deposit made, and for such fees and expenses as were incurred by her. *Page 372